## McPhee et al. v. O'Rourke.

1. Under the statute concerning homesteads the wife has the character of a head of the family, while occupying with her husband her property as a home, to enable her to designate and affect such home with the character of a homestead, so as to exempt it from seizure and sale for the joint debt of herself and husband.
2. There is no proviso in the statute against its operating against a creditor for material used in improvements upon the property before it was designated as a homestead.
3. The homestead character of the property is not vitiated when the designation thereof for a homestead was for the purpose of preventing a creditor from collecting his debt.

### *Error to Superior Court of Denver.*

BRIDGET O'ROURKE, defendant in error, who was plaintiff below, filed her complaint there on the 27th day of April, 1883, in which she alleged facts, showing ownership and possession of a certain house and lot in the city of Denver, county of Arapahoe, under the value of $2,000; and that she had been seized and possessed thereof from the 1st day of February, 1883; that during all that time she had been, and still remained, a householder, and head of a family, and so occupied the said premises, together with her family, as a homestead; that on the 5th day of February, 1883, she had duly designated the said premises as a homestead, by proper entry upon the records of the said county, where the deed conveying said property to her was recorded; that on the

17th day of February, 1883, a judgment had been rendered against her jointly with her husband, Dennis. O'Rourke, in favor of the said McPhee & McGinnity, by a justice of the peace of said county, and a transcript thereof duly filed and entered in the office of the clerk of the district court of said county, so that on the said 17th day of February the judgment stood as a judgment of that court, and, accordingly, execution thereon then issued to the said Spangler, sheriff of the said county, who by virtue thereof then levied upon said premises, and on the 12th day of March following sold the same, by virtue thereof, to said McPhee & McGinnity for the sum of $147.90, and accordingly issued to them a certificate of sale.

The relief asked was that said sale be set aside and held for naught, and that the said sheriff be enjoined from making a deed under the said certificate. Answer thereto was filed as follows: "They admit that the plaintiff, at the times mentioned, had the legal title to the premises described in the complaint, but they say that the equitable title belongs to Dennis O'Rourke, the husband of the plaintiff — in this, that the money with which said premises were purchased was the money of the said Dennis O'Rourke, and that he caused the title to said premises to be placed in the plaintiff, that he might, and with intent to, defraud, hinder and delay his creditors. They deny that, at the times mentioned in the complaint, the plaintiff, then or at any other time, was a householder or the head of a family; on the contrary, they aver that the plaintiff is, and was at the time mentioned, a married woman; and is and was the wife of Dennis O'Rourke, and that the said husband occupies the said premises, now and at all times previous hereto occupied the same as the head of the family, and he maintains and provides for said family, and the plaintiff is now, and was at the times mentioned in the complaint, and at all other times, simply a member of the said family, and of which her

said husband, Dennis O'Rourke, was and is the head. They deny that the said plaintiff has occupied said premises at any time heretofore, or does now occupy them with her family; but they admit that the said Dennis O'Rourke has, as head of the family, occupied said premises with his family, and that the plaintiff is a member thereof. They admit that the plaintiff did, on the 5th day of February, 1883, cause the word 'homestead' to be entered of record at the page, in the margin of the record book, in which the deed conveying to her the legal title to said premises was recorded, and that the same was signed and attested as alleged; but they aver that, long before the time when said claim of 'homestead' was entered as aforesaid, the defendants McPhee & McGinnity had obtained the judgment mentioned in said complaint, and the plaintiff, well knowing the premises, caused said entry of 'homestead' to be made with a fraudulent intent to cheat, hinder and delay her creditors, and particularly with the fraudulent intent to prevent the said McPhee & McGinnity from collecting their said judgment. They deny that the sale and certificate of purchase in complaint mentioned, or either of them, are invalid, and they also deny that the same or either of them is a cloud on plaintiff's title. And the defendants further aver that the debt upon which the said judgment was obtained were for lumber and other building material, all of which was sold by the defendants McPhee & McGinnity to the plaintiff and her husband, for use in and upon the said premises, and the said lumber and other material was all used by plaintiff and her said husband in the erection and repair of buildings, and other lasting and valuable improvements thereon, and the credit was given by said defendants to the plaintiff and her husband on the faith and credit of the said premises being liable to execution and sale to satisfy the said debt."

To which answer a general demurrer was filed and sustained; and, the defendants below abiding by their answer, judgment and decree were entered according to the prayer of the complaint as follows: "This cause coming on to be heard on the plaintiff's complaint, the answer of defendants, and the plaintiff's demurrer to the defendants' answer, and having been argued by counsel for the respective parties: Now, therefore, on consideration thereof, it is ordered, adjudged and decreed, and the court doth hereby order, adjudge and decree, that the facts alleged in said defendants' answer are not sufficient to constitute a defense to plaintiff's cause of action, and that the demurrer of the plaintiff thereto be, and the same is hereby, sustained. And the defendants having elected to stand by their said answer, and having refused to answer further, it is further ordered, adjudged and decreed by the court that the sale of said premises described in plaintiff's complaint, to wit: Lot No. twenty-six (26), in block numbered forty-five (45), in Evans' addition to the city of Denver, in the county of Arapahoe, and state of Colorado, and house and improvements thereon, to the defendants McPhee & McGinnity, by the defendant Spangler, on the 12th day of March, A. D. 1883, as set forth in plaintiff's complaint, be, and the same is hereby, set aside, and declared null and void; and that the said judgment of said defendants McPhee & McGinnity be, and the same is hereby, declared to be no lien upon the above-described premises, and that the defendant Michael Spangler, sheriff of Arapahoe county, and his successor or successors in office, be, and they are, perpetually enjoined and restrained from making any deed of the said above-described premises to the defendants McPhee & McGinnity, or to their assigns, in pursuance of the sale thereof, made by said defendant Spangler to said defendants McPhee & McGinnity, on the 12th day of March, A. D. 1883, as alleged in plaintiff's complaint; and that

the plaintiff have and recover of and from said defendants, the costs of this suit to be taxed, and have execution therefor."

From which the cause is brought here by writ of error.

Messrs. Mᴀʀᴋʜᴀᴍ, Pᴀᴛᴛᴇʀsᴏɴ and Tʜᴏᴍᴀs, for plaintiffs in error.

Mr. J. P. Bʀᴏᴄᴋᴡᴀʏ, for defendant in error.

Sᴛᴀʟʟᴄᴜᴘ, C. By the record and argument three questions are presented for consideration:

1. Under our statute concerning homesteads, has the wife the character of a head of the family, while occupying with her husband her property as a home, to enable her to designate and affect such home with the character of a homestead, so as to exempt it from seizure and sale for the joint debt of herself and husband? The first and fourth sections of the statute are as follows:

"Section 1. Every householder in the state of Colorado, being the head of a family, shall be entitled to a homestead not exceeding in value the sum of $2,000, exempt from execution and attachment arising from any debt, contract or civil obligation entered into or incurred after the 1st day of February in the year of our Lord 1868."

"Sec. 4. When any person dies seized of a homestead, leaving a widow, a husband or minor children, such widow or husband or minor children shall be entitled to the homestead."

In the enactment of these provisions the legislature recognized a married woman as a person possessing to some extent the character of a householder and head of a family, though living with her husband. The purpose of the statute is to preserve the home for the family. When the wife is the owner of the property occupied as the home of the family, she is the only one capable of investing it with the exemption character provided by

the statute.   Under our statutes the married woman
never did occupy the dwarfed position that afflicted her
under the common law.   Since the act of our legislature
of 1874 the married woman has been without disability
concerning her property and property rights; and, at the
time of the passage of the homestead act in 1868, she
owned and controlled all property she brought to the mar-
riage, independent of her husband; had power to carry
on business in her own name, to sue and be sued as if
single, and to acquire property by her earnings and busi-
ness, and to hold the same, as if single.   So we conclude
that, in the nature of things, and in the legislative mind,
the husband and wife both possess the character of a
householder and head of a family, at least to the extent
to enable either of them owning the home they occupy as
such, to designate it as a homestead, and that the statute,
as is clearly apparent from the language used in section
4, above quoted, is expressive of such view.   Thomp.
Homest. §§ 220–222.

2. Should the act designating the homestead operate
as against a creditor for material used in improvements
upon the property before it was so designated?   As to
this question, it is sufficient to say that there is no pro-
viso in the statute against such operation.   By failing
to take the steps necessary to secure a lien upon the
premises, under the provisions of our mechanic's lien
act, the right to subject the premises to such debt was
lost.

3. Does it vitiate the homestead character of the prop-
erty when the designation thereof as a homestead was
for the purpose of preventing the creditor from collect-
ing his debt?   The purpose of the designation of the
property as a homestead is to put it out of the reach of
creditors while occupied as a home; and such purpose,
and the consequent result of such designation, are war-
ranted by the statute, though occurring after the debt
was contracted, and immediately before the creditor had

attached or levied upon the property, and though the debtor had no other property liable for his debt. *Barnett v. Knight*, 7 Colo. 365. In no way does the statute rest upon the principles of equity, nor in any way yield thereto. By it we see the policy of the state is to preserve the home to the family, even at the sacrifice of just demands, for the reason that the preservation of the home is deemed of paramount importance. The exemption under the homestead act being confined to debts contracted after the passage of the act, it may well be said that there can be no superior or controlling equity in the premises, and he who gives credit does so with knowledge of the statute, and the purpose and policy thereof, as well as the additional risk thereby occasioned. And whether the title to the home be in the maternal or paternal head of the family, they occupy a position in relation to the state making it more important that such home should be preserved to them, than that it should be taken to pay the legal demands against them collectible by attachment and execution. The duty and relation to the state in such case are of higher import than the duty and relation to such creditor. In the first section of his work on homesteads and exemptions, Mr. Thompson reproduces some expressions from eminent sources upon this view, as follows: "The late Senator Benton, advocating in the United States senate the adoption of a general homestead policy, said: 'Tenantry is unfavorable to freedom. It lays the foundation for separate orders in society, annihilates the love of country, and weakens the spirit of independence. The tenant has, in fact, no country, no hearth, no domestic altar, no household god. The freeholder, on the contrary, is the natural supporter of free government, and it should be the policy of republics to multiply their freeholders, as it is the policy of monarchies to multiply their tenants.' 'There is,' said Tarbell, J., in a case in Mississippi, 'unquestionably, no greater incentive to virtue, industry and love of country

than a permanent 'home,' around which gather the affections of the family, and to which the members fondly turn, however widely they may become dispersed.' 'The law,' said the supreme court of Iowa, in an early case, 'is based upon the idea that, as a matter of public policy, for the promotion of the prosperity of the state, and to render independent and above want each citizen of the government, it is proper he should have a home,— a homestead,— where his family may be sheltered, and live beyond the reach of financial misfortune, and the demands of creditors who have given credit under such law. And this policy is characterized as 'liberal' and 'benevolent.'"

It is also contended by counsel for plaintiff in error that this property was acquired by the defendant in error, Bridget O'Rourke, by a conveyance from her said husband, Dennis O'Rourke, who was jointly indebted with her on the said demand of the said McPhee & McGinnity; that such conveyance was without consideration and in fraud of his creditors, the said McPhee & McGinnity; and that such conveyance should be held void and the property applied to the discharge of his said debt; that it was not rightfully her property when she designated it as a homestead. Such are the premises for a creditor's bill in equity, the consideration of which is impracticable in this action by reason of the want of Dennis O'Rourke as a party to the action. *Allen v. Tritch,* 5 Colo. 222. But even had the husband, Dennis O'Rourke, been made a party, the legal *status* of the parties here would remain unchanged. The judgment of plaintiffs in error was against both the husband and wife, Dennis and Bridget O'Rourke. The conveyance of the property from one to the other could in no way prejudice plaintiffs in error in the collection of their judgment, as it is not such a conveyance as one conveying the property to a person whose property would be beyond the reach of the judgment. Besides, it has been held

that when a conveyance to the wife is made or caused to be made by the husband, for the purpose of placing the home beyond the reach of his creditors, the wife is not precluded thereby from claiming the benefit of the homestead statute, even as against such creditors. *Orr v. Schraft*, 22 Mich. 260; *Edmonson v. Meacham*, 50 Miss. 39. The decree should be affirmed.

We concur: MACON, C.; RISING, C.

PER CURIAM. For the reasons assigned in the foregoing opinion the decree of the superior court of the city of Denver is affirmed.

*Affirmed.*