Thomson, J.,
delivered the opinion of the court.
On the 29th day of January, 1892, the plaintiffs in error *263 brought their action against P. O. Hargis and. S. Y. Mannon, in which summons was issued and served on the defendant Mannon. On the 5th day of March, 1892, a writ of attachment was issued in the cause, which was levied upon certain real estate in Ouray county as the property of Mannon. On the 11th day of April, 1892, Mannon filed his petition in the cause, together with an affidavit supporting it, claiming the land levied upon as a homestead, and praying its release from the levy. On the 12th day of April, 1892, the plaintiffs answered the petition. From the petition, affidavit and answer, the following facts appear: On the 4th day of September, 1884, Mannon entered the tract of land, of which that levied upon is a part, in the United States Land Office, and received in pursuance of his entry a receiver’s duplicate receipt, which, on the 10th day of October following, he caused to he recorded in the office of the recorder of Ouray county. ■ On the 6th day of December, 1884, by an instrument, which was in form a deed, but was in fact a mortgage, he conveyed the tract to one Begole, to secure an indebtedness from him to Begole of $1,000. On the 31st day of May, 1886, he paid this indebtedness, and received from Begole a quitclaim deed for the property. On January 14, 1887, Mannon caused the word “ homestead ” to be entered of record on the margin of the record of the receiver’s receipt, which marginal entry was signed by him and attested by the clerk and recorder, together with the date and time of day upon which the marginal entry was made. After the homestead record was made Mannon sold and conveyed to different parties certain undivided interests in the tract, and made a lease of the residue for a term of years, excepting the dwelling house occupied by him, the land upon which it was situated, and another small portion of the tract. The attachment was levied upon the interest remaining in Mannon at the time of the levy, which was worth about $500. At the time the homestead record was made, Mannon was the head of a family, living upon and occupying the land, and continued to live upon and occupy it, together with his family, down to the time of *264 the levy. On the 10th day of March, 1892, Mannon sold and conveyed his entire remaining interest. Upon the hearing the court granted the prayer of the petitioner and discharged the attachment levy. This ruling is assigned for error.
The contention of plaintiffs is, first: that a receiver’s duplicate receipt is not such an instrument as is authorized by law to be recorded; that as Mannon had conveyed the land to Begole, who had afterwards reconveyed it to him, the recording of the deed from Begole was th'e first legal record of his title; that the homestead entry should have been made on the margin of the record of that deed; and that the entry having been made on the margin of the record of the receiver’s receipt, it was a nullity; and, second: that the several conveyauces, and the lease made b3^ him, subsequent to the record entry, constitute an abandonment of the homestead exemption.
A receiver’s duplicate receipt is simply a certificate of the entry and purchase of the land it describes, and is b3^ statute made evidence of title in the person making the purchase, his heirs and -assigns. (General Statutes, sec. 1310.) Section 215 makes provision for the recording of all deeds, conveyances, and agreements in writing, of, or affecting, title to real estate,- or any interest therein. A receiver’s certificate is, in effect, an agreement on the part of the United States, to issue to the purchaser a patent for the land purchased, in consideration of the purchase price, and, as such, would by the terms of the section be entitled to record. The record of this certificate would therefore be the recorded title, upon the margin of which the word “ homestead ” might be entered, so as to give the owner the benefit of the homestead act. Where a party, after acquiring title to land, conveys it in such manner that his title is extinguished, and it subsequent^ returns to him by independent conveyance, if he then desires to avail himself of the benefits of the homestead law, it is questionable whether he should not use the record of the later conveyance for that purpose. The language of the *265 statute on the subject is entirely general, and its proper construction with reference to the particular recorded title which should be used may be open to argument; but there is nothing in this case which demands a decision of the question. The deed from Mannon to Begole, although in form absolute, was in fact but a mortgage, and possessed only the attributes of a mortgage. It was given as security for a debt. It was not a relinquishment of title, but an incumbrance upon it. In like manner the quitclaim from Begole back to Mannon, was only a release of the mortgage. Being a mortgage, although in form a conveyance, until forfeiture it was a security merely, which conferred no right of entry upon the mortgagee. Drake v. Root, 2 Colo. 685. This being the case, the release from Begole was no part of Mannon’s recorded title within the meaning of the law, so that, in so far as we are advised, the only title which he had, and upon the margin of which he could make the statutory entry, was the receiver’s receipt. We are of the opinion that this receipt, as his evidence of title, was properly recorded, and that the entry made by him on the margin of its record was a fulfillment, on his part, of the requirements of the law, and entitled him to its benefits.
It appears that, at the time of the levy, the only interest in the land which remained in Mannon was an undivided one-fourth; and that he was then a tenant in common with the persons owning the other three-fourths. It is urged that by the sale of the undivided interests, and the making of the lease, the homestead exemption was destroyed. If this is true, it is because the acquisition of a homestead right in lands which the claimant does not hold in severalty is forbidden by the spirit and letter of the statute. Homestead rights and exemptions are statutory creations; but when we consider the humane and benevolent purposes, and the motives of public policy which underlie the enactment of such statutes, they should receive a broad and liberal interpretation. We quote the following from the act concerning homesteads:
*266 “ Section 1. Every householder in the state of Colorado, being the head of a family, shall be entitled to a homestead not exceeding in value the sum of two thousand dollars, exempt from execution and attachment, arising from any debt, contract or civil obligation entered into or incurred after the first day of February, in the year of our Lord one thousand eight hundred and sixty-eight.”
“ Section 2. To entitle any person to the benefit of this act, he shall cause the word “homestead” to be entered of record in the margin of his recorded title to the same, which marginal entry shall be signed by the owner making such entry and attested by the clerk and recorder of the county in which the premises in question are situated, together with the date and time of day upon which such marginal entry is so made.
“Section 3. Such homesteads shall only be exempt as provided in the first section of this act, while occupied as such by the owner thereof, or his or her family.”
“Section 7. When any creditor shall be of the opinion that any homestead provided for in this act is of greater value than two thousand dollars, on filing an affidavit of that fact, with the clerk of the district court, such creditor may proceed against such homestead as-in ordinary cases, and if the said homestead shall sell for more than two thousand dollars and costs, the excess shall be applied to the payment of the demand of such creditor; but in all such cases the sum of two thousand dollars, free of charge or expense, shall be paid to the owner of the homestead; and in case the said homestead shall not sell for more than two thousand dollars and costs, the person instituting the proceedings shall pay all costs of such proceeding, and the said proceeding cease and not affect or impair the rights of the owner of the homestead.” Gen. Stats. (1883) pp. 539, 540.
It will be seen that the benefits of the act are extended to every householder, being the head of a family, without qualification, except as to the value and occupancy. The homestead must not exceed in value $2,000, and is exempt only *267 while occupied by the owner or his family. As to the character or extent of his title the statute is entirely silent. It has been repeatedly, and in so far as we know, uniformly held, that an ownership in fee is not essential; that an equitable title, a lease for a term of years, or any title which may be the subject of levy and sale, may also be the subject of a homestead claim; and on principle, in the absence of statutory limitation, we are unable to see why, as against any person except the cotenants, an exemption may not be predicated upon an undivided as well as a several interest, when the other essentials concur. Of course the claimant cannot set up his homestead as against his cotenants; but if they are satisfied, what right have third parties to complain? There is a line of authorities holding that a homestead exemption can be claimed only in case of sole ownership of the land; but we think it will be found, upon an examination of the cases, that in most of them the decisions were controlled by some peculiar phraseology of the statutes which were the subjects of construction. The homestead act of Wisconsin provided that when a levy was made upon the land of one whose homestead had not been selected and set apart by metes and bounds, he might then make the selection, and notify the officer what he regarded as his homestead ; and that if the plaintiff in the execution was dissatisfied with the quantity thus selected, the officer should cause a survey to be made, beginning at a point to be designated by the owner, and set off the proper amount in a compact form, including the dwelling house. In West v. Ward, 26 Wis. 579, the court held, construing this statute, that it was impracticable to apply any of those provisions to an undivided interest in real estate; and that it would be impossible to set off to the party any specific portion which might not, on a partition, fall to some of his cotenants. See, also, Thurston v. Maddocks, 6 Allen, 430; Wolf v. Fleischacker, 5 Cal. 244; Kellersberger v. Kopp, 6 id. 564.
The difference between the Wisconsin statute and ours is patent. Our homestead act does not fix the quantity of land *268 which may be held as a homestead. It is the value and not the amount which is limited; and where a creditor is of the opinion that the value is greater than the debtor’s right, he may, by taking the steps prescribed, have it all sold, and if it brings more than $2,000 he will get the excess; but there is no setting apart of any separate portion to the debtor and calling that the exemption to which the law entitles him. The language of the statute throughout applies precisely as well to an undivided as to a sole ownership. There are nowhere any words which indicate an intention on the part of the legislature to distinguish between one and the other. It has never been disputed that a party who has acquired a homestead may sell integral portions of it without impairing his rights in the residue under the statute ; and why may he not also sell undivided portions with the same result? If any reason exists it certainly does not appear in the act. In the absence of any statutory obstruction, the courts generally seem to have found no difficulty in upholding a homestead claim upon an undivided estate. Horn v. Tufts, 39 N. H. 478; McClary v. Bixby, 36 Vt. 254; Terrant v. Swain, 15 Kans. 146; Thorn v. Thorn, 14 Iowa, 49.
Neither would a lease of a portion of the estate, or even of the whole of it, of itself work an abandonment of the homestead. The question of abandonment is very largely one of intention. If Mannon had left the premises with the intention of never returning, his homestead rights would have been extinguished; but if his removal was temporary only, accompanied by an intention to return and resume possession of his homestead at a future time, there would be no abandonment. Thompson on Homesteads, § 264 et seq. And on the same principle a relinquishment of possession to a tenant for a definite period, the reversion remaining in the lessor, would have no effect upon his homestead rights. Mannon, although he leased a portion of the premises, still continued to reside upon the property. It would have made no difference if he had not. Notwithstanding the lease, his homestead *269 exemption was intact. Wiggins v. Chance, 54 Ill. 175; Potter v. Davenport, 79 Ill. 455; Stewart v. Brand, 23 Iowa, 477.
The sale of the homestead subsequent to the levy outs no figure in the case. The statute provides for such sale, and if it was bona fide, and for value, of which there is no question, the purchaser took it unaffected by any claim against the vendor.
We are of the opinion that the judgment releasing the property from the levy was proper, and it is accordingly affirmed.

Affirmed.