D. C. HUNTER AND W. S. HUNTER v. MATTIE GRIFFITH *et al.*

(Filed February 5, 1903.)

HOMESTEAD—When Insolvent Debtor May Acquire. Where an insolvent debtor, a resident of this territory and the head of a family, purchases a certain house and lots for the use of herself and family as a home, and proceeds to occupy the same as such, which house and lots were purchased with non-exempt assets, the same being the proceeds of an insurance policy upon her husband's life, and not property upon the faith and existence of which she has been given credit: Held, that the property is the homestead of the debtor, and exempt from levy and sale. And, in such a case, the fact that she directs the legal title to be conveyed to a third person, for the use and benefit of herself and family, does not change this rule.

(Syllabus by the Court.)

*Error from the District Court of Logan County; before John H. Burford, Trial Judge.*

*Dale & Bierer,* for plaintiffs in error.

*Geo. S. Green* and *Geo. M. Green,* for defendants in error.

Opinion of the court by

PANCOAST, J.:   This was an action commenced in the district court of Logan county by the plaintiffs in error against the defendants in error on the 18th day of May, 1900. The action was one in the nature of a creditor's bill, to subject certain real estate to the payment of plaintiff's judgment, which they had theretofore obtained against the defendant Mattie Griffith and her husband, during his lifetime.   The case was tried to the court, without a jury, and special findings of fact were made, together with conclusions of law, which findings of fact we deem a sufficient statement of the case for all the purposes of this opinion.   They are as follows:

"1.   On January 2, 1896, W. S. Hunter and D. C. Hunter, plaintiffs in this case, obtained a judgment in the district court of Logan county against R. A. Griffith, Mattie Griffith and C. H. Griffith for the sum of $1,412.00 and costs of suit and foreclosure of a mortgage subject to a prior mortgage, and on March 16, 1896, there was credited on said judgment the proceeds of the sale of the mortgaged property, the sum of $453.38, and no other payments have ever been made on said judgment.   There is now due on said judgment the sum of $1,321.95.

"2.   On January 21, 1896, Charles H. Griffith took out a life insurance policy in the New York Life Insurance company, for the sum of $2,000. payable to his wife, Mattie Griffith.

"3.   On June 28, 1899, Charles H. Griffith died, leaving surviving him as heirs at law, his widow, Mattie Griffith, and their children, Ethel Grace Griffith, Nina Loraine Griffith and Raymond E. Griffith.

"4.   Between the first of July, 1899, and September 1,

1899, Mattie Griffith received from the New York Life Insurance company the amount of the policy on her husband's life, amounting to over $2,000 and caused the money so received to be deposited in the Guthrie National bank to the credit of her minor daughter, Ethel Grace Griffith.

"5.   In July, 1899, Mattie Griffith purchased from Fred R. Janes and wife for the sum of $1,600, lots fifteen and sixteen in block forty-one in East Guthrie, O. T., and caused the same to be conveyed to her brother, Edmund B. Stevens.

"6.   That the purchase money for said real estate was paid from the moneys deposited in the Guthrie National bank to the credit of Ethel Grace Griffith, and which was the proceeds of the life insurance policy on the life of C. H. Griffith.

"7.   That the moneys paid for said lots fifteen and sixteen in block forty-one, was the money of the defendant, Mattie Griffith.

"8.   That the conveyance to, Edmund B. Stevens was made on July 18, 1899, and on July 20, 1899, Grace Griffith drew a check upon the Guthrie bank payable to the order of Ed .B. Stevens, for the sum of $525, which was paid out of the funds received on the life insurance policy, and was used by Stevens to pay Janes for the real estate purchased by Mattie Griffith.

"9.   That situated on said real estate is a dwelling house occupied by Mattie Griffith and her three minor children Ethel Grace, age seventeen, Nina Loraine, age twelve, and Raymond, age fourteen, and said family has no other home and no other property.

"10.   That Mattie Griffith is a widow, and the head of a family, and has no property subject to execution, and had not at the time of the bringing of this action; that she purchased said real estate for a home for herself and children,

and has occupied the same ever since the same was purchased from Janes and wife.

"11. That Edmund B. Stevens died, testate in Cleveland county, Oklahoma, on September 2, 1899, and that his will was duly proved and probated in the probate court of Cleveland county, Oklahoma. That by the terms of said will he devised to Ethel Grace Griffith, Nina Loraine Griffith, and Raymond E. Griffith, the real estate conveyed to him by Janes and wife, to-wit: lots fifteen and sixteen in block forty-one, in East Guthrie, O. T., and said devisees now hold the legal title to said real estate, and so held the same when this suit was commenced.'

"12. That said Ethel Grace Griffith, Nina Loraine Griffith and Raymond E. Griffith, or either of them never paid anything of value for said real estate, but the same was paid for with the funds belonging to Mattie E. Griffith.

"13. Mattie Griffith had no actual knowledge that any part of the Hunter judgment was unpaid at the time said real estate was purchased from Janes and conveyed to Stevens.

"14. That the defendant Mattie E. Griffith is insolvent and has no property subject to execution and had none at the time this suit was commenced; that R. A. Griffith is not a resident of Logan county and has no property in the Territory of Oklahoma, subject to execution, and none at the time of the commencement of this action.

"15. That the debt for which the judgment was rendered in favor of D. C. and W. S. Hunter was for money loaned by them to the deceased Charles H. Griffith, and was originaly $1,700."

The plaintiffs in error do not seem to find any fault with the facts as found by the court. Indeed each and every find-

ing, as we view them, was just as the plaintiffs claimed the facts to be. It is with the conclusion of law based thereon that the plaintiffs in error take issue with the court.

After a careful examination of the briefs of both parties, and the record, we think there is but one proposition in this case, and that is: Can an insolvent debtor secure to herself and family a homestead, by purchasing a house and lots with non-exempt assets, which house and lots she occupies as a residence? There is some conflict of authority upon this proposition. There are some cases where the courts have refused to uphold the doctrine, when the consideration paid for the homestead was taken from non-exempt property, upon the faith and existence of which the debtor was given credit; but even in cases of this kind, some of the courts have upheld the homestead doctrine.

In the case of *Jacoby v. Parkland Distilling Co.,* 41 Minn. 227, in the trial court the defendants offered to prove that the insolvent debtor moved into the property in controversy in contemplation of insolvency, and that such property constituted a large part of his assets; that his express purpose in holding it as homestead was to withdraw it from the reach of his creditors. Second, that in a financial statement made to the plaintiffs, and upon the faith of which they gave him the credit, he had included as a part of his assets the property in question. The supreme court held in that case that:

"A debtor in securing a homestead for himself and family, by purchasing a house with non-exempt assets, or by moving into a house which he already owns, takes nothing from his creditors which the law secures to them, or in which

they have any vested right. He merely puts his property into a shape in which it will be the subject of a beneficial provision for himself, which the law recognizes and allows. Even if he disposes of his property subject to execution, for the very purpose of converting the proceeds into exempt property, this will not constitute legal fraud. This he may do at any time before the creditors acquire a lien upon the property. It is a right which the law gives him, subject to which every one gives him credit, and fraud can never be predicated on an act which the law permits."

This case is one of the strongest along this line, and goes farther than is necessary for the court to go in this case, as we think there is a distinction between cases where property is acquired with non-exempt assets, which assets have not been used in making a financial statement, or upon the faith of which credit has not been given, and those cases where the non-exempt property has been used in making financial statments, and upon the faith of which credit has been extended.

In the case of *Tucker v. Drake,* 11 Allen, 145, the supreme court of Massachusetts say:

"The policy of the insolvent law is as clear in the provisions which it makes for the debtor as in those which it makes for the creditors. The debtor, by securing a homestead for himself and family, whether by an arrangement with creditors who might levy on it, or by the purchase of a house, or by moving into a house which he already owns, takes nothing from his creditors which the law has secured to them, or in which they have any vested right. He conceals no property, he merely puts his property into a shape in which it will be the subject of a beneficial provision for himself which the law recognizes and allows."

In other words, this case holds, with many others, that

when a person gives credit to another, he does so with the full knowledge of the effect of the homestead and exemption laws. He is aware of the fact that the debtor may, at any time, so use his property, either by a sale of that which he has and the purchase of other property, or by moving into that which he already owns to secure to himself the homestead which the law provides he may hold. This being his right, whether solvent or insolvent, the changing of property from non-exempt to exempt property can hardly be said to be a fraud in any case, except it be so held in the case just mentioned, where the credit has been given upon the strength thereof.

In the case of *Sproul v. Atchison National Bank,* 22 Kan. 336, a person wishing to relieve the homestead from a mortgage on it, encumbered other and non-exempt property in order to do so; and this was upheld by the court, although the holder of the homestead was, at the time, greatly involved in debt. The court in this case say:

"Under the constitution and statutes of this state, it is not illegal or fraudulent to hold property in a homestead exempt from the claims of general creditors; and the right of the homestead occupants to so hold such property, is paramount to any right of any general creditor. * * * Equity, therefore, as guided and directed by the constitution and statutes of this state, favors the protection of the homestead from the claims of creditors. And generally, whatever is done in good faith for the protection of the homestead from creditors, is not looked upon as a fraud or as illegal, but is looked upon as a proper and legitimate transaction."

In the case at bar credit was not given upon the faith or strength of the money used in the purchase of the property in controversy. The money was not in existence when the

credit was extended. The receipt of the money was only made possible by the death of the husband. It was a provision which he had made for the maintenance of his wife and children. This money remained in existence for a considerable time after it as received from the insurance company. No attempt was ever made by the plaintiffs in error to in any way subject it to the payment of their claim. The property in question had been used and occupied as a home by the widow and children for a considerable time before this action was commenced.

In the case of *Cipperly v. Rhodes,* 53 Ill 346, it is held that it is not a fraud upon creditors for the debtor, even if in insolvent circumstances, to buy a homestead, which would be beyond their reach. In this case the title was not taken directly to the debtor, but the legal title was conveyed to the wife, which we suppose might be held as a scheme resorted to to elude the vigilance of the creditors, as well as in the case at bar. In this case it was not questioned that the right of homestead would have existed in the debtor had he taken the deed in his own name, instead of that of his wife, but it was contended that because the deed was taken in his wife's name he had forfeited such right and the transaction had operated as a fraud upon his creditors, so that the sole question in the case, as decided, was whether the taking of the deed in his wife's name placed the property beyond the protection of the homestead law. The court held that if his intention was to purchase the property for a homestead, and he had used it as such, the taking of the deed to his wife would not cut off that right, and that it was not a fraud upon creditors to buy a homestead which would be beyond their reach.

Again, in the case of *North v. Shearn,* 15 Tex. 175, the debtor, a single man, contracted a large amount of indebtedness, and while in failing circumstances he took the means for which he had contracted the debts, and, with knowledge of his inability to pay his debts, erected a dwelling house of large value, contracted marriage, and began to occupy the house as his residence. It was insisted that this was in fraud of his creditors; that he should not be allowed to have the right to have the property protected from his creditors under the homestead and exemption laws. The court, in that case, held that if no one but the fraudulent debtor were interested, the argument might have some force, but inasmuch as the homestead exemption was not given or intended for the benefit of the husband or head of the family alone, that the wife had at least an equal interest in the exemption of the homestead, and that there was no intentional fraud practiced, unless it was using non-exempt funds to build the residence property; and that the motives with which a debtor used non-exempt funds in erecting a homestead would not be inquired into. That the law protected the homestead from debts contracted before, as well as after, it was acquired. That to admit evidence and inquiries of the character therein proposed would have the manifest tendency to destroy the sanctity and inviolability which the law attaches to the right of homestead, and that the practical effect would be to deny to an unfortunate debtor in failing circumstances the right to provide a house for shelter and protection for his wife and children. The children here will take the same place that the wife and children did in the case just referred to. No matter what may have been the motives of Mrs. Griffith otherwise, if her object was to obtain a home for herself and children, following

the reasoning of the case just cited, the homestead should be upheld.

In the case of *Randall v. Buffington,* 10 Cal. 491, a debtor in failing circumstances, and owing a debt in the sum of one thousand dollars, which was secured by a mortgage on his homestead, after he had become insolvent, and after attachments had been issued and levied upon his store, took money which he had and paid off the debt secured by the mortgage on the homestead, the court holds that the payment was not an act to hinder, delay and defraud his creditors; that the removal of the lien from the homestead was but the consequence of an act lawful within itself. In this case the defendant denied his insolvency at the time of the payment of the mortgage, and denied all intent to hinder, delay or defraud his creditors. The court, however, placed very little weight upon his denial, holding that the intent of a party must be gathered from the transaction; that the facts should be regarded rather than the assertions of the party. It was there argued that the act was fraudulent, as the payment resulted to the benefit of the defendant, relieving his homestead of the incumbrance. The court, however, held that:

"The payment conferred upon the debtor no new right. He owned the homestead, free from liability. before the debt to the plaintiff was contracted, and he simply restored its former exemption, by paying a debt which he had incurred upon its security."

We might multiply these cases to almost any extent. The cases of *Kelly v. Sparks,* 54 Fed. Rep. 70, and *O'Donnell v. Segar,* 25 Mich. 366, both of which are cited in the defendant's brief, are directly in point. But plaintiffs in error in-

sist that these cases are not in point; that there is a distinction between these cases and the case at bar; that, admitting if Mattie Griffith had taken this insurance money and purchased the property, taking the title in her own name, she could then have claimed the same as her homestead, yet she cannot do so now because of the fact that she did not take the title to herself; that she took the title in the name of her brother, Edmund B. Stevens, with the agreement and understanding that it should be conveyed to her children, and this not being a straightforward course, was intended to hinder and delay her creditors, and the effect was a fraud upon their rights and interests. Counsel, however, fail to point to an authority which makes this distinction. The principal authorities cited under this head are those which hold to the position that the debtor cannot take property upon the strength of which he has obtained credit, and convert it into a homestead. These authorities are quite numerous, but there are others just as respectable that take the other view. As stated before, however, we do not deem it necessary to decide that point in this case. That question is not before us, and it is, therefore, unnecessary to do so.

In support of their argument, counsel cite Waples on Homestead and Exemption, page 499, where the author uses the following language:

"However much the law may favor the home when acquired, it never encourages or excuses the rascally procurement of the sacred possession."

This language standing alone would, indeed, be very strong in favor of counsel's position. Taking it in the connection in which it is used, however, it will be seen that it

was never intended by the author to be applied to such a state of facts as we are now considering. This language is used under the head of "Fraudulent Acquisition" of homestead, in such cases as buying the same with another's money, exchanging goods for the homestead when the goods have not been paid for, fraudulent selection from liable property, etc., neither of which is analogous to the case at bar, but, on the contrary, this author, while he does not seem to personally approve the doctrine going to the extent that goods which have been used to obtain credit may be taken and transferred into a homestead, cites the cases holding that doctrine, and gives them that credit which he thinks they are entitled to.

In the cases of *Bennett v. Huston,* 33 Ark. 762, and *Long Brothers v. Murphy,* 27 Kan. 375, are those holding that a debtor when absolutely insolvent and having his creditors pressing him, and fully cognizant of his inability to pay his debts, cannot transfer the possession of goods purchased by him on credit, and take in exchange therefor land, either in his own, or his wife's name, and convert it into a homestead as against such existing creditors.

If the defendant Mattie Griffith could have purchased this property and taken the deed to herself directly and openly, notwithstanding the judgment that then existed against her, how can it affect her creditors that she had the legal title conveyed to her brother, even with the agreement that he should finally convey the same to her children? If she had the right to convert this money into a homestead, we cannot see how the fact that the legal title was placed in her brother can affect her creditors. The material proposition in that regard seems to us to be the fact that she purchased

the property for a residence, and occupied it with her family as such. She or her children may never have acquired the full legal title to the property, and yet it would not have affected the legal status, because a homestead can be founded upon any kind of a title, legal or equitable, and it is the equitable title which the plaintiffs in error are now conceding to her, and before they could recover it would be necessary for the court to find, as a matter of law, that she had at least an equitable title in the premises, for without that the plaintiffs must absolutely fail. Conceding, then, that she has the equitable title, the fact as to who holds the legal title, becomes immaterial.

Again, counsel, seem to be annoyed by the persistency with which defendants use the case of *Kennedy v First National Bank of Tuscaloosa,* 18 South. Rep. 396, but certainly, so far as this case is in point at all, it is the strongest case cited by either party. In this case an insolvent debtor had transferred a large amount of property, which included his homestead, and in an action to set aside the transfer, it was held to be in fraud of the creditors and the transfer was, by judgment of the court, annulled. After the case had been litigated, and the judgment had been rendered against the debtor and his grantee, adjudging the transfer to be fraudulent and void as against his creditors, and in which case the debtor had answered, denying the alleged fraud, and denying that he owned or had any interest in the land conveyed, and after the grantees had answered therein that they were the *bona fide* holders of the same, the debtor was held to have the right to maintain his homestead exemption as to the property occupied by him as a homestead, and the same was set apart.

to him, and held to be exempt. Now, we have no doubt that it was entirely unnecessary that two suits should have been maintained in order to arrive at the last judgment. If the debtor had, in addition to his attempted defense to the first cause, shown that the property conveyed was, in part, his homestead, instead of waiting until after the judgment and then instituting a new suit to litigate that proposition, the court would, in the first instance, have refused to set aside the transfer as to that part of the property which was held to be the homestead, and that, to some extent, would be this case. Here the defendant, Mattie Griffith, is attempting to uphold her homestead right in property, the legal title to which she caused to be conveyed to a third person. The equitable title, however, she claims to be in herself and children.

Finding no error in the record, the judgment of the court below is affirmed.

Burford, C. J., who presided in the court below, not sitting; all the other Justices concurring.