## EVANS et al. v. EVANS.

### No. 27046. April 27, 1937.

L. O. Todd and F. V. Westhafer, for plaintiffs in error.

Chas. L. Yancey, G. C. Spillers, and Kavanaugh Bush, for defendant in error.

CORN, J. The parties herein are referred to as they appeared in the trial court, Chas. Evans, as plaintiff, and Rex Evans, his wife, Gladys, and Dr. Hugh Evans and his wife, Betsy, as defendants.

In May, 1935, plaintiff brought this action in the district court of Tulsa county against the defendants for the cancellation of two deeds and possession of the properties conveyed.

Plaintiff's petition consisted of two causes of action: The first cause of action declared that in December, 1923, plaintiff and wife, Minnie Evans, stepmother of defendants, in order to place the property beyond the reach of "execution in a certain case," conveyed lot 6, block 1, T. T. T. addition, the south 66 ft. of lot 2, and west 32 ft. of south 66 ft. of lot 1, all in block 4, George Perryman addition, to Rex Evans; that this property was his homestead at the time and remained the homestead until 1930; that in 1930 Rex Evans took possession; that there was an oral agreement to reconvey the property if the same did not become clouded by judgment and execution.

The second cause of action declared that in August, 1930, the plaintiff being of un-

sound mind, but in order to avoid the lien of judgment in a certain action pending, conveyed lots 11 and 12, block 11, West Tulsa addition, to Hugh Evans, and in 1934 Hugh Evans conveyed said property to Rex Evans.

The defendants answered with a general denial; admitted that the conveyances were fraudulent; admitted possession by Rex Evans since 1930; and alleged that plaintiff is estopped by his own deed, his own fraud, and his own laches to be heard in a court of equity.

On these issues the case came on for trial to the court without a jury; all parties stipu'ated that in 1923 plaintiff was of sound mind when the deed to the property in the first cause of action was made. After the evidence of both parties had been introduced, the court rendered judgment for the plaintiff on his first cause of action and for the defendants on the second cause of action. The plaintiff did not appeal.

A part of the finding of facts and judgment of the trial court is as follows:

"The court finds that this action was brought by the plaintiff Charles F. Evans against his two sons, Rex W. Evans and Hugh Evans, and their wives, to cancel a deed, and for possession of real estate covered by said deed.

"The court finds that the plaintiff conveyed to his son, Rex W. Evans, the property in question in this suit, known as the West Tulsa property, and the homestead property, for the purpose of defrauding one Charles B. Rogers with whom the plaintiff had had a fight and was fearful that Rogers would file a lawsuit against him.

"The court finds that the said Rogers did file a lawsuit against the plaintiff at the time the deed in question was executed.

"The court finds that at the time the deed was executed from plaintiff to Rex W. Evans, the said Rex W. Evans was a student at the University of Oklahoma, and did not know he was to receive the deed until it reached him through the mails.

"The court finds that the homestead property described as follows:

"Lot six, block one, T. T. T. Addition to the city of Tulsa, and the south sixty-six feet of lot two, and the west thirty-two feet of the south sixty-six feet of lot one, all in block four, George B. Perryman addition to the city of Tulsa,

—was occupied by the plaintiff and his wife, the step-mother of his two sons, as their homestead; that when the defendant, Rex W. Evans, came home from the University at Christmas, his father explained the situation to him, and explained to him why the property was being placed in his name; that the plaintiff continued to live in the premises until about December, 1930, when because of his mental condition he was confined to the Eastern Oklahoma Hospital, Vinita, Okla., where he remained for two or three years, during which time the defendant Rex W. Evans and his wife moved into the premises and occupied it as their homestead and have continued to do so until the present time.

"The court further finds that it was the intention of the plaintiff to retain the beneficial interest in these properties, and to place merely the naked title in his son for the purpose of avoiding any possible judgment that might be obtained against him by the said Charles B. Rogers.

"The court finds that the plaintiff was of sound mind at the date of the execution of the instrument involved in this suit.

"The court further finds that there was no consideration given by the defendant Rex W. Evans, or received by the plaintiff, for the execution and delivery of said deed.

"The court further finds that in 1934 the plaintiff was finally discharged from the hospital at Vinita and returned to Tulsa; and that soon thereafter suit which had been brought theretofore by Charles Rogers was dismissed for want of prosecution; and the plaintiff requested his son, Rex W. Evans, to restore to him (the plaintiff) his property, but which the said Rex W. Evans refused to do.

### "Conclusions of Law.

"The court concludes as a matter of law that the execution of the instrument from Charles F. Evans to Rex W. Evans, in 1923, created a resulting trust in favor of Charles F. Evans in that the legal title was transferred, but the intent was, and appeared to be, that the beneficial interest was not to go, or to be enjoyed with the legal title.

"That the transfer of the legal title to the West Tulsa property described, as fol'ows: Lots eleven and twelve in block eleven, West Tulsa addition to the city of Tulsa, Tulsa county, Oklahoma, was a fraudulent conveyance against Charles B. Rogers, and the plaintiff cannot have a trust declared on this property in a court of equity inasmuch as the plaintiff does not come into court with clean hands as to this property.

"The transfer of the homestead by the plaintiff was not a fraudulent conveyance since the property, being homestead, was exempt property, and could not have been subject to execution of any judgment in favor of any of the creditors of Charles F. Evans."

The evidence without conflict sustains the finding of facts by the trial court.

This property, being a homestead, would be exempt from the lien of a judgment had Charles B. Rogers obtained one against plaintiff; therefore, no creditor could have been hindered, defrauded, or delayed. As far as creditors' rights were concerned, no one would have been injured, and plaintiff could have been neither injured nor benefited by the transfer of the legal title to the homestead. There cannot be a fraudulent conveyance of a homestead.

In Alexander v. Bobier, 65 Okla. 301, 303, 166 P. 716, 718, this court held:

"The petition states facts sufficient to show that the conveyance mentioned was a fraudulent conveyance, if the property conveyed were not the homestead of the grantors. This raises the question whether or not there can be a fraudulent conveyance of the homestead, or whether or not the owner of the homestead can convey his property in such a manner as to perpetrate a fraud upon his creditors.

"The law has made the homestead free and independent of its owner's debts and creditors, and in extending credit to his debtor the creditor need never take in consideration the homestead as an asset of his debtor, to which he can look for the satisfaction of the debt. The creditor is not permitted to inquire into the manner of the disposition of a homestead. The owners of homesteads have a right to dispose of the same as they see fit without interference by their creditors. The law has placed the homestead beyond the reach of the creditors, and it would be anomalous to say that it would be a fraud for the debtor to attempt to do the same thing. A conveyance of a homestead with intent to defeat creditors does not destroy or terminate the homestead. Dulion v. Harkness, 80 Miss. 8, 31 South. 416, 92 Am. St. Rep. 563; Dortch v. Benton, 98 N. C. 190, 3 S. E. 638, 2 Am. St. Rep. 331; McPhee v. O'Rourke, 10 Colo. 301, 15 P. 420, 3 Am. St. Rep. 579; Hamby v. Lane, 107 Tenn. 698, 64 S. W. 1067, 89 Am. St. Rep. 967; Kershaw v. Willey, 22 Okla. 677, 98 P. 908; Hixon v. George, 18 Kan. 253; Monroe v. May, 9 Kan. 466; Wilson v. Taylor, 49 Kan. 774, 31 P. 697; 20 Cyc. 381. Neither does the transfer of the legal title to a third person extinguish or terminate the homestead. An equitable title or interest is a sufficient basis to support the homestead estate. Perry v. Ross, 104 Cal. 15, 37 P. 757, 43 Am. St. Rep. 66; Lessell v. Goodman, 97 Iowa, 681, 66 N. W. 917, 59 Am. St. Rep. 432; Tarrant v. Swain, 15 Kan. 146; Moore v. Reaves, 15 Kan. 150; Stowell v. Kerr, 72 Kan. 330, 83 P. 827; Dallemand v. Mannon, 4 Colo. App. 262, 35 P. 679; Hunter v. Griffith, 12 Okla. 436, 72 P. 361."

27 C. J. 657, section 426, states:

"* * * If a party, under the mistaken apprehension that certain property could be held liable for his debts, conveys the property to evade this liability, he will be entitled to recover back the property if in fact it was not liable for his debts. * * *"

The facts in Bobier v. Horn, 95 Okla. 8, 222 P. 238, are similar to the facts in the case at bar, except that the property was not a homestead, and plaintiff was a creditor. However, the court in that case cited Alexander v. Bobier, supra, with approval, and indicated what the holding of the court would have been if the property had been a homestead. The 8th paragraph of the syllabus by the court is as follows:

"Although, under the general rule, equity will refuse relief to either party to an agreement tainted with illegality or fraud, yet, where a father, joined with his wife, conveys the naked legal title to their homestead to a son under such conditions and circumstances as would create a resulting trust in favor of the grantors, and under the false impression that the homestead could be sold to satisfy an anticipated judgment against the father, the son will not be permitted to invoke the equitable rule above set forth, and hold said property and refuse to reconvey the same, for the reason that the conveyance was not fraudulent as against the creditors of the grantor, as in no event could the homestead have been subjected to the payment of said debts or judgment."

Defendants contend that plaintiff is estopped by his alleged unclean hands, illegality, and fraud to recover his homestead. Bobier v. Horn, supra, holds, in effect, that when the property is a homestead, there is no illegality or fraud, since the homestead is exempt and not subject to a fraudulent conveyance, and "The son will not be permitted to invoke the equitable rule above set forth." If the property is a homestead, creditors are not defrauded, and the maxim with respect to unclean hands has no application.

Judgment of the trial court affirmed.

OSBORN, C. J., BAYLESS, V. C. J., and PHELPS and HURST, JJ., concur.