In re Patricia G. CAREY, Debtor.

MARINE MIDLAND BUSINESS
LOANS, INC., Plaintiff,

v.

Patricia G. CAREY, Defendant.

No. CIV 89–641–R BK.
Bankruptcy No. 88–02576–TS.
Adv. No. 88–0272.

United States District Court,
W.D.Oklahoma.

Nov. 9, 1989.

## MEMORANDUM OPINION

DAVID L. RUSSELL, District Judge.

Before the Court is an appeal from an Order Sustaining in Part Objection to Claim of Exemption and Granting Judgment for Defendant entered below on February 7, 1989 (hereinafter "Order"). 96 B.R. 336. Said Order reflects the bankruptcy court's judgment on (1) Plaintiff's Objection to Claim of Exemption with respect to homestead property of the Defendant, and (2) Plaintiff's adversary complaint seeking denial of discharge of the Defendant Carey based on allegations that the Defendant intended to hinder, delay, or defraud her creditors within the meaning of 11 U.S.C. § 727(a)(2)(A).

Issues presented on appeal by Plaintiff are (1) whether the bankruptcy court erred in finding that the debtors bankruptcy planning failed to constitute fraud for purposes of denial of the debtor's homestead exemption; and (2) whether the bankruptcy court erred in finding that the Debtor's bankruptcy planning failed to constitute a fraud on creditors for purposes of denial of the Debtor's discharge.

The Court finds that jurisdiction to consider the issues on appeal is present under the provisions of 28 U.S.C. § 158(a).

In the judgment under review, the bankruptcy court made findings of fact based on two documents [1] entered into evidence at the trial below, which are attached to the court's order. In summary, these facts, *inter alia,* disclose the following:

1. Debtor and her husband were personal guarantors of debt owed to Plaintiff, which was a major financer of the [now bankrupt] Carey Lumber Company. (Order, p. 2)

2. In late 1985, Carey Lumber Company began experiencing financial difficulties. "Debtor and her husband mortgaged their home to provide an infusion of capital into the business. In addition, Debtor liquidated her portfolio of stocks and loaned the proceeds of approximately $85,000.00 to the Company." (Order, p. 2)

---

1. Defendant's Exhibit 1 and Plaintiff's Exhibit 27.

3. Prior to filing her Chapter 7 bankruptcy petition on April 20, 1988, the Debtor engaged in extensive pre-bankruptcy planning, taking "[e]very advantage the bankruptcy law could afford." (Order, p. 3)

a. "[S]everal transactions occurred which resulted in no monetary gain for Debtor and no apparent loss to the bankruptcy estate." (Order, p. 3)

b. Other transactions, however, did result in loss to the bankruptcy estate, as the Order sets out at p. 3–4:

> Debtor appears to have converted virtually all her remaining non-exempt property, carefully documented as to value, into cash used to pay down the mortgage on her homestead. This included jewelry, Debtor's one-half interest in Carey Equipment Company's assets amounting to approximately $16,000.00, and her interest in a Colorado time-share condominium development amounting to approximately $34,300.00. Also utilized for this purpose were joint income tax refunds, the proceeds from the sale of two cars owned by her husband and a portion of her pre-bankruptcy earnings.
> The $85,000.00 loan Debtor made to the Company [Carey Lumber Company] was repaid to her prior to the Company's bankruptcy, and at least $27,000.00 of

this repayment was also applied toward the mortgage debt [on the homestead]. The only item of non-exempt property not converted to cash or conveyed away by Debtor was that portion of the homestead exceeding the statutorily allowed exemption of one-quarter of an acre of land.[2]

4. Finding for the Debtor on the issue of discharge, the Debtor "succeeded in placing close to $180,000.00 beyond the reach of creditors during the 21–month period immediately preceding the filing of her bankruptcy petition." (Order p. 8)

5. The Debtor fully disclosed all transactions in the bankruptcy schedules and at the first meeting of creditors. *"No direct evidence of concealment or fraud concerning debtor's pre-bankruptcy activities* was brought to the attention of the Court." (Order, p. 8–9) (emphasis supplied)

Based on these facts the bankruptcy court concluded, upon its analysis of the law, that "[t]here has not been a sufficient showing of overt conduct on the part of Debtor from which to infer as a matter of law the requisite intent necessary to deny Debtor a discharge under § 727(a)(2)(A)." The court further concluded that "[t]he evidence is insufficient as a matter of law to support the imposition of a trust or lien

---

2. With respect to enactments of the Oklahoma legislature concerning exemptions of homestead, the following statutes are applicable:

*31 O.S. § 1.A.1.*

§ 1. *Property exempt from attachment, execution or other forced sale—Bankruptcy proceedings*

A. Except as otherwise provided in this title and notwithstanding subsection B of this section the following property shall be reserved to every person residing in the state, exempt from attachment or execution and every other species of forced sale for the payment of debts, except as herein provided.

1. The home of such person provided that such home is the principal residence of such person; ...

*31 O.S. § 1.B.*

B. No natural person residing in this state may exempt from the property of the estate in any bankruptcy proceeding the property specified in subsection (d) of Section 522 of the Bankruptcy Reform Act of 1978 ...

By this provision, effective June 25, 1980, the Oklahoma legislature determined that state ex-

emptions shall apply in Oklahoma bankruptcies, pre-empting the federal exemptions allowed by the Bankruptcy Code. Therefore, one is hard-pressed not to conclude that the more liberal treatment under Oklahoma law was intended. *See generally,* 12 Okl. City U.L. Rev. 279 (1987).

*31 O.S. § 2*

§ 2. *Homestead—Area and Value—Indian allottees—Temporary renting*

The homestead within any city or town, owned and occupied as a residence only, shall consist of not exceeding one (1) acre of land, to be selected by the owner: Provided that the same shall not exceed in value the sum of Five Thousand Dollars ($5,000.00), and in no event shall the homestead be reduced to less than one-quarter (¼) of an acre, without regard to value: ...

Further, the Constitution of the State of Oklahoma, Article XII, § 1 contains substantially identical language. *See also, Okla. Const.* art. 12, § 2 (with respect to exemptions from forced sales).

upon debtor's homestead, though this is indeed a close question." (Order, p. 11)

The issues raised by the Plaintiff on appeal do not go to the bankruptcy court's findings of fact in this case, but instead question the court's application of those facts to relevant law, which this Court reviews *de novo. Rubenstein v. Ball Bros., Inc. (In re New England Fish Co.),* 749 F.2d 1277 (9th Cir.1984).[3]

### Analysis

With respect to conversions of non-exempt property to exempt property, the law defining the "per se" rule is old and well-established. It is succinctly stated in *Crawford v. Sternberg,* 220 F. 73, 76 (8th Cir.1915), as follows:

It is well settled that it is not a fraudulent act by an individual who knows he is insolvent to convert a part of his property which is not exempt into property which is exempt for the purpose of claiming his exemptions therein, and of thereby placing it out of the reach of his creditors. (citations omitted)

*See also, Forsberg v. Security State Bank,* 15 F.2d 499 (8th Cir.1926); *In Re Ellingson,* 63 B.R. 271 (Bkrtcy.N.D.Iowa 1986). This is consistent with legislative history of the Bankruptcy Code.[4]

This is additionally consistent with Oklahoma law, where perhaps the strongest statement of the rule specifically related to homestead (but not in the context of bankruptcy) is found in *Evans v. Evans,* 180 Okl. 46, 67 P.2d 779, 781 (1937):

The law has made the homestead free and independent of its owner's debts and creditors, and in extending credit to his debtor the creditor need never take in consideration the homestead as an asset of his debtor, to which he can look for

the satisfaction of the debt.... The law has placed the homestead beyond the reach of creditors and it would be anomalous to say that it would be fraud for the debtor to do the same thing. (citations omitted)

*See, Hunter v. Griffith,* 12 Okl. 436, 72 P. 361 (1903).

Since the enactment of the Bankruptcy Reform Act of 1978, numerous courts have considered fact situations which demonstrate seeming inequities with respect to creditors of "monied" debtors, particularly in states as Oklahoma with liberal exemption laws. Some courts have carved out specific exceptions to exemptions and/or discharge based on theories of actual or constructive fraud. However, this Court finds no case in Oklahoma or in this circuit that denies an exemption or discharge when the exempted property in question is the designated homestead of the debtor.

### A. Denial of Homestead Exemption

The bankruptcy court granted in part the Objection to Claim of Exemption, and required the Debtor herein to "designate which portion of her homestead, not to exceed one-quarter acre, is claimed as exempt pursuant to state law." (Order, p. 12) The review of such judgment, with respect to the Debtor's right to exemption, is determined by state law. *Matter of Reed,* 700 F.2d 986, 991 (5th Cir.1983), *Norwest Bank Nebraska, N.A. v. Tveten,* 848 F.2d 871, 874 (8th Cir.1988).

The Court has reviewed the Tenth Circuit's recent opinion in *In Re Mueller,* 867 F.2d 568 (10th Cir.1989), in which the circuit court considered a Kansas statute exempting the nonforfeiture value of life insurance purchased before bankruptcy. Kansas courts had judicially created an exception to exemption based on a creditor's

---

**3.** If the bankruptcy court's findings could be viewed as a mixed question of law and fact, this Court does not find them to be "clearly erroneous." *Supre v. Ricketts,* 792 F.2d 958, 961 (10th Cir.1986).

**4.** Both House and Senate Reports regarding a debtor's right to claim exemptions state:

As under current law, the debtor will be permitted to convert non-exempt property into exempt property before filing a bankrupt-

cy petition. The practice is not fraudulent as to creditors, and permits the debtor to make full use of the exemptions to which he is entitled under the law.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 361 (1977), *reprinted in* 1978 U.S.Code Cong. & Ad. News 5963, 6317; S.Rep. No. 989, 95th Cong., 2nd Sess. 76 (1977), *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5862.

showing that it possessed "a 'peculiar equity' in the non-exempt assets used to acquire the property." *Id.* at 569. In apparent response, the Kansas legislature amended the statute in 1984 to exclude exemption of this item if bankruptcy was instituted within one year of acquisition of the policy and the debtor purposed to defraud creditors in its acquisition. The Tenth Circuit affirmed the bankruptcy court's inference of intent to defraud on the part of the debtor based on the "badges of fraud" present in the facts.

Like Kansas, the Oklahoma legislature in 36 O.S. § 3631(B) has specifically excepted from exemption life insurance premiums paid in fraud of creditors. Additionally, in 1987 the Oklahoma legislature amended 31 O.S. § 1 to include an exemption for interest in qualified retirement plans, 31 O.S. § 1(A)(20), but specifically made this exemption subject to the Uniform Fraudulent Transfer Act. One cannot avoid observing that while these exceptions are *specifically* made (as was the case in *Mueller*), no like exception is made in the homestead and other exemptions found in 31 O.S. §§ 1(A)(1–19), 2.

> It is axiomatic that when a legislature amends prior law it is presumed the legislature intended to make a change in the meaning and effect of the law. (citation omitted) Of equal significance is the presumption that a legislature does not intend to enact useless or meaningless statutes. (citation omitted)

*In Re Mueller, supra,* at 570.

Distinguishing and mitigating facts in this case include:

(1) In the 21–month period preceding the Debtor's filing of the petition in bankruptcy, the largest percentage of payments against the homestead mortgage were derived from earned income and tax refunds. Obviously, future income of a guarantor is not "pledged" to a creditor in the sense of property mortgaged or subject to a security agreement.

(2) The acts of converting non-exempt property to exempt property in this case were fully disclosed on the Debtor's bankruptcy schedules.

(3) The conversions in this case are difficult to characterize as happening on the "eve of bankruptcy" in that they occurred over some period of time prior to the filing of debtor's petition, with several occurring more than one year prior to the Debtor's filing of the petition.

(4) The bankruptcy court, having heard the evidence and observed the demeanor of the witnesses, found no direct evidence of fraud, and as a matter of law, could not imply fraud from the mere fact of conversion.

This Court, having considered the findings and conclusions of the bankruptcy court, and having reviewed the authorities *de novo*, affirms the trial court's Order granting in part only the Plaintiff's Objection to Claim of Exemption.

**B.** *Denial of Discharge Under 11 U.S.C. § 727(a)(2)(A)*

Plaintiff next contends that the bankruptcy court erred in failing to deny the discharge of the debtor based on the provisions of 11 U.S.C. § 727(a)(2)(A). With respect to the bankruptcy court's denial of discharge, a debtor's right to discharge is to be determined under federal law. *Matter of Reed, supra,* at 991; *Tveten, supra,* at 874.

11 U.S.C. § 727(a)(2)(A) provides as follows:

> (a) The court shall grant the debtor a discharge, unless—
>
> .　　.　　.　　.　　.
>
> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed—
>
> (A) property of the debtor within one year before the date of the filing of the petition; ...

To the extent consistent with federal law, the Court adopts its reasoning set forth above in its determination as to the bankruptcy court's allowance in part of Debtor's homestead exemption. Additionally, the Court reiterates that the Debtor

herein reported all conversions of non-exempt property to exempt property on her bankruptcy schedules. This fact distinguishes bankruptcy cases turning on the debtor's "false oath" as evidence of intent to defraud. *In Re Swift*, 72 B.R. 563 (Bkrtcy.W.D.Okl.1987). Counsel for Plaintiff relies heavily on the *Tveten* case, where the court inferred intent to defraud from the debtor's conversion of non-exempt assets into life insurance or annuity contracts, which were exempt under Minnesota law. Consistent with *Mueller*, 36 O.S. § 3631(B)'s fraud exception would aid this Court were it dealing with exempted life insurance policies. This is not the case, however, in the appeal under consideration. Stronger protection has been traditionally afforded the family homestead as discussed herein; and the Court is unaware of precedent in this judicial district or circuit, on which it could base an inference of intent to defraud under these facts.

Therefore, the bankruptcy court's order denying Plaintiff's objection to discharge is affirmed.

### Conclusion

Judge TeSelle's Order, issued below, aptly sets out the competing interests of all concerned. This Court declines to judicially resolve that which, if resolution is needed, should be resolved by the Oklahoma legislature and/or the United States Congress.

Consistent with the foregoing, the Court holds that the law and the facts before it will not support an inference of intent to defraud on the part of the Debtor in converting non-exempt assets to increase equity in her homestead. There being no direct evidence of fraud presented, this holding is determinative of both issues raised on appeal.

The judgment of the bankruptcy court is affirmed.

IT IS SO ORDERED.