JOHN D. BLUE and ELLA BLUE v. LOUIS HEILPRIN & COMPANY, *et al.*, Appellants.

**Homestead Right:** ACTUAL OCCUPANCY. Plaintiff purchased a lot, and began the erection thereon of a house, for his home. The homestead then occupied by him was then sold, and during the building of the new house he resided in a rented one. Some articles were removed to a shed on the new premises, and plaintiff cultivated a garden there, but the greater part of the household goods were moved into the rented house. On completion, the family moved into the new house, and used it as a homestead. *Held*, that the homestead character attached only from actual occupancy of the premises.

EXEMPTIONS. The homestead character attaches to a lot purchased for a homestead from the time the purchaser disposes of his former homestead using the proceeds thereof to pay for the new homestead although at that time there was no house upon the lot, but the exemption from debts accruing prior to such occupation is limited to the extent of the value of the old homestead under Code, 1873, section 2000, authorizing the owner to change the limits of the homestead or to "change it entirely" with the concurrence of the husband or wife, and section 2001, exempting the new homestead to the extent in value of the old from execution in all cases where the old homestead would have been exempt; and the homestead may be sold subject to such exemption if it appear that the debtor's other property has been exhausted in satisfaction of the debt.

CHANGE. Independently of a change a homestead right will not attach as contemplated by Code, 1873, section 2000, to a lot purchased for a homestead until the occupation of the house erected thereon, although prior to the time the owner had commenced the construction of a house to replace that removed from the lot when he purchased it, and had sold his former homestead

*Appeal from Benton District Court.*—HON. G. W. BURNHAM, Judge.

FRIDAY, MAY 20, 1898.

PLAINTIFFS, husband and wife, bring this action against Louis Heilprin & Co., and the members of said

co-partnership, who are judgment creditors of John D. Blue, and against S. H. Metcalf, sheriff. They ask that the levy and sale of the premises described, made by said sheriff to the other defendants under an execution issued on said judgment, be set aside, and the issuing of a sheriff's deed enjoined, upon the ground that the premises sold were and are the homestead of the plaintiffs. The defendants answered, denying that said premises were the homestead of the plaintiffs at the time the indebtedness for which said judgment was rendered was incurred. A decree was rendered declaring that said judgment is not a lien upon said premises, and setting aside said sale; also, perpetually enjoining the sheriff from issuing a deed thereunder. Judgment was rendered against the defendants for costs. Defendants appealed.—*Affirmed* in part, and *reversed* as to other part.

*J. J. Mosnat* for appellants.

*Tom H. Milner* for appellees.

GIVEN, J.—I.   The facts necessary to be noticed are, in substance, as follows: Plaintiffs were for many years residents of Belle Plaine, Iowa, and for nineteen years preceding April, 1893, occupied a certain house and lot in that town as their homestead. On November 1, 1892, Mr. Blue purchased the lot in question, situated in said town, for one thousand and fifty dollars, and thereafter sold an old house thereon for one hundred and forty dollars, which house was removed from the lot prior to February, 1893. About the first of March, 1893, Mr. Blue commenced excavating upon said lot for the purpose of erecting a new house, and proceeded with the construction of the house to completion. The house being then just completed, the plaintiffs, with their family, moved into it on October

3, 1893, and have ever since occupied the premises as their homestead. April 10, 1893, Mr. Blue sold the house and lot then and theretofore occupied as a homestead for one thousand, two hundred dollars, and gave possession to the purchaser about May 10, 1893; he and his family then moving into a house rented by the month, to remain therein until the new house was completed. On leaving the old home, plaintiffs removed some wood, coal, garden tools, a bench, and two or three old chairs, to a woodshed on the new premises, the remainder of their household goods being taken to the rented house, where only such parts as were necessary were unpacked and used. During the construction of the new house, plaintiffs and their children were frequently on the premises; the plaintiffs inspecting the work, and their son assisting, to a limited extent, in painting the house. Plaintiffs also cultivated the garden ground on the new premises for the use of the family. Plaintiffs paid for the lot in question, and the construction of the house, between three thousand seven hundred dollars and three thousand, nine hundred dollars; using for that purpose the one thousand, two hundred dollars received from the sale of the old homestead, the one hundred and forty dollars received from the sale of the old house, two hundred dollars claimed to have been contributed by Mrs. Blue from her own money, four hundred and seventy dollars of borrowed money, and the balance from the business of Mr. Blue. For a number of years prior to 1893, Mr. Blue had been engaged in the mercantile business at Belle Plaine, and was a frequent purchaser of goods from Louis Heilprin & Co., who were wholesale dealers in Chicago, Illinois. On June 9, 1893, Mr. Blue gave an order to said firm to "please make and send" to J. D. Blue, eighty-seven cloaks, of specified kinds and prices, aggregating eight hundred and twenty-nine dollars and

twenty-five cents. Under date of August 4, 1893, Mr.
Blue wrote the firm: "Do not ship my cloaks as early
as Aug. 15th. I shall not want them before Sept. 10-15,
unless the weather changes very much. I may be in
Chicago at that time. However, I will notify you when
to ship." The cloaks were shipped September 14, 1893,
and received by Mr. Blue, and put into his stock for
sale. This sale of cloaks was upon the usual terms of
credit, with six per cent. discount for payment in ten
days, and five per cent. for payment in thirty days. On
January, 11, 1894, Mr. Blue transferred all his stock of
merchandise, including the cloaks unsold, to the First
National Bank of Belle Plaine, and to Etta Morton,
to secure his indebtedness to them, and, as further
security, gave to said bank a mortgage for one thousand,
five hundred dollars on the premises in question.

II. We first notice the provisions of the following
sections of the Code of 1873: Section 1988 provides:
"Where there is no special declaration of the statute
to the contrary, the homestead of every family, whether
owned by the husband or wife, is exempt from judicial
sale." Section 1992 declares: "The homestead
may be sold on execution for debts contracted
prior to the purchase thereof, but it shall not
in such case be sold except to supply the deficiency
remaining after exhausting the other property of the
debtor liable to execution." Section 2000 authorizes
the owner to change the limits of the homestead, or to
"change it entirely," with the concurrence of the hus-
band or wife. Section 2001 provides that "the new
homestead, to the extent in value of the old, is exempt
from execution in all cases where the old or former
homestead would have been exempt, but in no other,
nor in any greater degree." There is no question that
the plaintiffs have acquired a homestead right in the
new premises, but the contention is whether they

acquired it before or after the debt for which judgment was rendered was contracted. If the debt was contracted when the order for the cloaks was given, it was contracted June 9, 1893; but, if not until the shipment was made, then it was September 14, 1893. Plaintiffs contend that they acquired a homestead right in the new premises when they commenced the construction of the house, in February or March; and, if not, that they certainly acquired it immediately upon disposing of their old homestead, April 10th. The defendant contended that the homestead character did not attach to these premises until the family moved into the new house, October 3, 1893. Such being the contentions, we need not determine at which date the indebtedness was incurred; for, if plaintiff's contention is to prevail, it was after the homestead right had attached; and if defendants' it was before. There are two ways in which plaintiffs could acquire a right of homestead in these premises, namely, by purchase, or by change of homestead. By purchase, as where the purchaser, having no other homestead, purchases and occupies as a homestead, or purchases with funds not derived from another homestead, and occupies as his homestead. By change of homestead, under section 2000, by changing the old for a new homestead, or purchasing the new with the proceeds of the old. The purpose of the law is to preserve to the family the home which it may have. While land constitutes a part of the homestead, the law contemplates the presence of a dwelling place, and land alone never constituted a homestead. It is conceded that mere intention to occupy as a homestead does not give the homestead right, and that there must be occupation as well as such intention. We have seen that the old house was removed from these premises before the construction of the new was commenced, and before the old homestead was sold. At those dates this was a vacant

lot, without a house to which the right could attach as an original acquisition of the homestead. If Mr. Blue, having no homestead, had purchased this lot, with the intention of erecting a house thereon, and making it his homestead, the homestead right would not have attached until the premises were occupied as such. Plaintiffs contend that they had such occupation of the new premises as to have made it their homestead from April 10th, and rely upon *Neal v. Coe*, 35 Iowa, 407, as supporting this claim. In that case the property purchased by the defendant as a homestead had a dwelling house and barn thereon, into which the purchaser removed his household furniture, with the intention of occupying the property as his homestead. Desiring to have the house repaired, he and his family lodged and boarded temporarily elsewhere during the progress of the repairs. It was while the house was thus occupied, and the repairs being made, that the plaintiff, with full knowledge of the facts, and of Coe's intention, loaned him the money for which the judgment was rendered. In that case there was a dwelling house to be occupied, and it was occupied as fully as the circumstances would admit, while in this there was no dwelling house to be occupied. We do not think that it should be said, under the facts, that there was such occupation of these premises as that, independently of a change of homestead, the homestead character had attached before the occupation of the house, October 3, 1893.

III.    We have seen that plaintiffs, being the owners of a homestead, could, under section 2000 "change it entirely." There is no doubt that it was the intention of the plaintiffs from the time they sold their old homestead to improve and occupy these premises as their future home, and that, in furtherance of that purpose, they constructed the new house, and have occupied the place. Now, while the right of homestead will not

attach to vacant land acquired by purchase, independently of a change of homestead, it will attach to vacant land exchanged for a homestead, or bought with the proceeds of the homestead, when held in good faith for use as a home. See *Mann v. Corrington*, 93 Iowa, 108. In that case it is said: "It is well settled that as a general rule a mere intention to occupy property as a homestead does not give it the character of a homestead before it is actually occupied for that purpose. * * * But that rule applies especially to the original acquisition of a homestead. It is not of universal application to a new homestead acquired in exchange for the old one." In the case of changes of homestead, the law follows and protects the proceeds of the old into the new homestead, and preserves the homestead as a continuing right. It seems to us quite clear that this was a change of homesteads, and that under the authority of *Mann v. Corrington*, *supra*, and the cases therein cited, we must hold that the homestead character attached to this property from the time that the plaintiffs disposed of their old homestead. Thus viewed, it is clear that the debt for which the judgment was rendered was not contracted prior to plaintiff's acquisition of the homestead right in this property; but it is also clear that the property is not exempt from that debt, except to the extent in value of the old homestead, as provided in said section 2001. Defendants' judgment was a lien subject to the homestead right, and therefore the court erred in decreeing otherwise; but as it does not appear that the execution sale was to supply a deficiency remaining after exhausting the other property of the debtor, and does appear that the property was sold without regard to the homestead right, the decree is correct in so far as it sets aside the sale and enjoins the issuing of a deed thereon. The statute, in such a case as this, exempts only to the

extent in value of the old homestead; and therefore the other items which entered into the payment for the property cannot be considered, to enlarge the exemption. The decree is reversed in so far as it holds that the defendants' judgment is not a lien, and it is affirmed in so far as it sets aside the execution sale, and enjoins the issuing of a deed thereon. The case will be remanded for a decree in harmony with this opinion.— AFFIRMED in part, and REVERSED in part.