## CROSBY v. ANDERSON *et al.*

No. 2770.   Decided Nov. 15, 1916.   Rehearing denied Dec. 28, 1916
(162 Pac. 75).

1. EVIDENCE—VALUE—COST.   While the amount expended in purchasing a lot and in erecting a house thereon, under certain circumstances and for certain purposes, is some evidence of value, and, in the absence of other direct and positive evidence of competent witnesses showing the present value of the property, may have some weight, yet where there is direct and positive evidence of the present value of the property the mere cost thereof at some prior time is not controlling if of any weight whatever.   (Page 171.)

2. HOMESTEAD—EXEMPTION—DEDUCTING MORTGAGE.   If after deducting value of subsisting liens on a homestead from its gross value, the net value does not exceed the exemption allowed by Comp. Laws 1907, section 1147, as to homestead exemption, a creditor may not interfere with the homestead.   (Page 171.)

3. HOMESTEAD—APPRAISERS—STATUTE.   In action in nature of creditor's bill to reach the equity in a homestead above the statutory exemption, it was not necessary to ascertain the value of the homestead by appraisers, since the statute relating to appraisers of homestead (Comp. Laws 1907, section 1166) provides for appraisers only in case an execution is levied on a home-

stead, etc., and under section 1162, as to homestead, no bid can be considered, and a homestead cannot be sold, unless the amount of the bid exceeds the statutory exemption; these statutes contemplating that before the court may proceed to appraise the homestead, it must be made to appear by proper evidence that its value is in excess of the exemption allowed by law.[1]   (Page 173.)

4.   APPEAL AND ERROR—REVIEW—FINDINGS—EQUITY.   On appeal in action in nature of creditor's suit to reach the value of a homestead above the statutory exemption the court is not bound by a finding as to value of the homestead which is not supported by the evidence, for, the case being in equity, the appellate court is bound by the undisputed evidence.   (Page 173.)

5.   FRAUDULENT CONVEYANCES—PURCHASE OF HOMESTEAD—FRAUD OF CREDITORS.   Purchase by insolvent debtor of a homestead with non-exempt assets is not fraud.   (Page 175.)

6.   HOMESTEAD—LOSS OF EXEMPTION—INTENTION TO DEFRAUD CREDITORS.   The fact that the owner of the homestead has conveyed it with the intent to defraud his creditors, does not affect his right to claim a homestead exemption in the premises so conveyed.   (Page 176.)

Appeal from District Court, Third District; *Hon. Geo. G. Armstrong,* Judge.

Action by Caroline J. Crosby against John Anderson and another.

Judgment for defendants.   Plaintiff appeals.

AFFIRMED.

*Stokes & Bagley* for appellant.

*Bagley & Ashton* for respondents.

FRICK, J.

On November 15, 1913, plaintiff commenced this action against the defendants in the nature of a creditor's bill.   In her complaint she in substance alleged that on the 6th day of May, 1912, she obtained a judgment for $1,500 against the

[1]*Kimball* v. *Lewis,* 17 Utah 381, 53 Pac. 1037.

defendant John Anderson for damages for a tort committed by him; that execution had been duly issued upon said judgment and returned wholly unsatisfied. Plaintiff then set out in detail that the defendant John Anderson, with the intent to defraud the plaintiff and to prevent her from collecting said judgment, had converted certain notes and mortgages into money with which he had purchased a certain lot in Salt Lake City and had erected a dwelling house thereon "expending thereon about $7,500," and that said Anderson, with the intent and purpose aforesaid, placed the title of said lot, and improvements thereon, in the name of his co-defendant Eliza A. Anderson, his wife, 'in whose name the title then was; "that plaintiff is informed and believes, and on that ground alleges, that the present market value of said house and lot exceeds the amount of defendants' exemption therein as allowed by law to the amount of $......." It is further alleged that said Anderson had no other property except said house and lot. The plaintiff, among other things, prayed judgment "that the said real estate and all appurtenances thereunto belonging be declared to be held in trust by the defendant Eliza A. Anderson for the use and benefit of the defendant John Anderson, and that the defendant John Anderson be compelled to set up his claim of exemption thereto; that appraisers be appointed to determine the value of said real estate, and that upon the return of the appraisement that the value therein, if any, over and above the defendants' exemption be subjected by a sale of the same to the satisfaction of plaintiff's judgment against the said John Anderson." The remaining portion of the prayer is not material here.

The defendants filed a joint answer in which, after denying the alleged ownership, they in substance aver that the house and lot in question were the property of the defendant Eliza A. Anderson by virtue of a certain contract entered into between the defendants on or about the 1st day of September, 1910, which contract is made a part of the answer; that the house and lot in question was the only real estate owned by either of the defendants; that the defendant Eliza A. Anderson claims the same as a homestead to the extent of the value of $3,500, the facts which under our Constitution and statute

entitle the defendants to a homestead of that value being
alleged. They also denied that said house and lot were of the
value of $7,500, or of any greater value than $5,000. John
Anderson also claimed a homestead exemption in said house
and lot by reason of being the head of a family as alleged.
They also averred that they had borrowed $2,200, which was
used in the construction of said house, and that they had exe-
cuted a mortgage to secure the payment of said amount which
constitutes a first lien on said real estate. They prayed that
the action be dismissed.

In support of the allegations of her complaint the plaintiff
produced evidence tending to show that she, on the 6th day
of May, 1912, obtained a judgment against the defendant
John Anderson; that execution had been duly issued thereon
and returned wholly unsatisfied; that said judgment was still
in full force and effect; that in supplementary proceedings
against said John Anderson he had testified as follows:

"I own my own house; that is, my wife has it; it is in
my wife's name. I contracted for it and had it built. I paid
the bills; yes, sir. It cost a little less than $7,000 with the
land. The only money I have spent has been in this house.
My wife did not invest any of her money in the house. Since
about January of last year (1912) I have sold property
amounting to about what that house cost—about $7,000."

The plaintiff also produced a doctor as a witness, who, in
substance, testified that in December, 1911, or January, 1912,
he had a conversation with the defendant John Anderson
regarding the action that plaintiff had commenced against
him and which was then pending. That the doctor advised
him to "settle the matter out of court." That the defendant
said he "would not do anything; was going to carry the thing
to the highest court and fight it, and even if judgment went
against him he would have everything out of his hands so
that the Crosby's wouldn't get anything." That is all the
evidence that plaintiff produced.

The defendants, in their testimony, in detail explained how
and where they obtained the money with which they pur-
chased the lot and paid for it and the house which they erected
thereon. They also produced a written contract entered into

between them in September, 1910. The plaintiff objected to the admission of the contract in evidence, and the same was admitted over her objection and exception. In view of what follows it is not necessary to set forth said contract. The defendants also proved that John Anderson was the head of a family consisting of his wife, five children and his aged mother, and that he had no property except the house and lot. John Anderson also denied and explained the statements testified to by the doctor. The defendants also produced a qualified witness who testified in chief: "The real estate is worth $800, and the house is worth $4,600." On cross-examination he testified that in his judgment the property could not be sold for more than $5,500. It was conceded by plaintiff at the trial that there was a mortgage on the lot for $2,250. Defendants' evidence respecting the value of the property was not disputed.

The court found that the defendant Eliza A. Anderson had paid for the lot and the house erected thereon with her own funds, and that the same was her property. The court also found the facts which constitute the house and lot the homestead of the defendants to the extent and value of $3,500, and found that the gross value of the homestead was not "exceeding $6,000." The court also found as a conclusion of law that the plaintiff was not entitled to the relief prayed for, or to any relief, and entered judgment dismissing the action, from which she appeals.

The plaintiff assails all the findings except the one that the premises in question constitute the homestead of the defendants. The conclusion of law and judgment are also assailed.

Plaintiff's counsel especially insist that the findings that the defendant Eliza A. Anderson furnished the money and paid for the house and lot, and that it was her property, are not sustained by the evidence. They also say **1, 2** that the court erred in admitting in evidence the contract entered into between the defendants. Assuming, without deciding, that counsel's contentions are sound, yet, in view of what follows, those findings and the admission of the contract aforesaid could not, and did not, prejudice the plain-

tiff in any substantial right. Again, assuming that the court
had found as counsel contend, yet; in view of the further
finding that the property in question constitutes the defend-
ants' homestead, and in the face of the undisputed evidence
concerning its value, and that there is a valid and subsisting
mortgage for $2,250, which constitutes a first lien on the
homestead, such a finding would not authorize the court to
grant plaintiff any relief against the homestead. Plaintiff
in her complaint recognizes the character of the property
in question as a homestead. Indeed, she prayed that John
Anderson be required to set up his claim of exemption thereto
and only asked relief as against the excess, if any, that
Anderson, by law, was permitted to claim as exempt. Plain-
tiff produced no proof whatever respecting the value of the
property in question except the statement of John Anderson,
that about $7,000 had been expended in paying for the house
and lot. While the amount that may be expended in pur-
chasing a lot and in erecting a house thereon, under certain
circumstances and for certain purposes, no doubt is some evi-
dence of value, and in the absence of other direct and positive
evidence of competent witnesses showing the present value
of the property, may have some weight, yet where there is
direct and positive evidence of the present value of the prop-
erty, the mere cost thereof at some prior time—in this case
certainly—is not controlling if of any weight whatever. The
defendant produced a witness who was familiar with the real
estate values in Salt Lake City and with the value of the
property in question, and he testified in chief that the lot
was worth $800, and the house thereon $4,600, and on cross-
examination said that they could not be sold "for any more
than $5,500." Both the plaintiff and the defendant were
content with that evidence respecting value since the former
did not attempt to dispute it in any way, and the latter pro-
duced no other evidence of value. Under our statute (Comp.
Laws 1907, section 1147), each head of a family is entitled to
a homestead exemption of $1,500 for himself, $500 for his
wife, and $250 "for each other member of his family." If,
therefore, as before stated, it should be held that the property
belonged to John Anderson and not to his wife, or that she

held it in trust for him, yet, under the provisions of the statute, and under the undisputed evidence respecting value, he was entitled to claim a homestead exemption in the property to the amount of $3,500. The only evidence respecting the value of the property at the time of trial, at which time, in cases of this character, the value controls (*Moore* v. *Scharf*, 110 Ala. 518, 17 South. 933), showed the property to be worth $5,500. According to the authorities (*Corey* v. *Plummer*, 48 Neb. 481, 67 N. W. 445; *Morrill* v. *Skinner*, 57 Neb. 164, 77 N. W. 375, and cases there cited), the value of subsisting liens must be deducted from the gross value thereof, and if, after deducting such liens, the net value does not exceed the exemption allowed by law, the creditor may not interfere with the homestead. If such were not the law the claimant could not hold as exempt a homestead of the value stated in the statute, but could claim a homestead exemption only to the extent that the value exceeded the valid liens against it, and if such liens exceeded the value of his statutory exemption he would be allowed nothing. That is neither the law nor the spirit of statutes like ours. Under the undisputed evidence, therefore, the gross value of the property in question did not exceed the sum of $5,500. It was conceded at the hearing that there was a valid and subsisting mortgage for $2,250, which constituted a lien upon the property. If the amount of the mortgage be deducted from the gross value it leaves an equity to the defendants of $3,250, or $250 less than the amount of the exemption allowed by our statute. There was nothing, therefore, that could be allowed under plaintiff's prayer because there was no excess "over and above the defendant's exemption."

On the oral argument it was, however, contended that the value of the homestead should be ascertained by appraisers, and not as it was done from the testimony of **3, 4** witnesses at the trial. Our statute (Comp. Laws 1907, section 1166), however, provides for appraisers only in case an execution is levied upon the homestead and the officer serving it and the owner cannot agree respecting the value of the homestead. Moreover, under our statute, the appraised value of the homestead, if it is appraised, does not control as

is the case in some jurisdictions, but, under section 1162, no bid can be considered and the homestead cannot be sold unless the amount of the bid exceeds the exemption allowed by the statute, regardless of what the appraisement may be. It is apparent, therefore, that the appraisement contemplated by our statute is for the purpose of setting off a certain portion of the entire property as a homestead if that can be done, and the portion so set off is appraised to determine the value that the statute allows as a homestead. As we have seen, the plaintiff, in her complaint, only seeks to reach the amount in excess of the statutory exemption. In view of that she was required to allege and prove that the value of the property in question exceeded the exemption allowed by our statute. While the plaintiff did allege the value of the property in question, she utterly failed to prove that after deducting the valid lien against it at the time of trial it was worth anything in excess of the exemption, while the defendants proved that it was worth less than the amount of the exemption. True, the court found that the property in question was of the "value of not exceeding $6,000." If that is taken as a finding that the property is worth $6,000, then there is no evidence to support such a finding, and, as this is a case in equity, we are bound by the undisputed evidence and must find accordingly.

*Mundt* v. *Hagedorn,* 49 Neb. 409, 68 N. W. 610, was a creditor's bill in which the plaintiff, as in this case, sought to subject a homestead to the payment of a judgment. The lower court made no finding respecting the value of the homestead, and the Supreme Court of Nebraska, upon conflicting evidence, made its own findings in which it found that the value of the homestead did not exceed the exemption, although there was evidence to the contrary, and upon such finding dismissed the action just as was done by the district court in this case. To the same effect are *Valparaiso State Bank* v. *Schwartz,* 92 Neb. 575, 138 N. W. 757, 42 L. R. A. (N. S.) 1213, Ann. Cas. 1914B, 935; *Arnold* v. *Estis,* 92 N. C. 162. In those cases it was so held notwithstanding the fact that in those states the statute provides that in case there is a

dispute regarding the value of the homestead the court shall appoint appraisers.

In California the statute provides for the appointment of appraisers by the court; yet in *Brown* v. *Starr,* 79 Cal. 608, 21 Pac. 973, 12 Am. St. Rep. 180, it was said:

"Whenever it appears that a homestead claimant holds land of greater value than $5,000 [the amount of the exemption allowed], and a creditor seeks to subject the excess to his execution, the court must first find out, through appraisers, whether it [the homestead] can be 'divided without material injury,'" etc.

It follows, therefore, that before the court could proceed to appraise the homestead it must be made to appear by proper evidence that its value is in excess of the exemption allowed by law. That, in effect, is also the conclusion reached by this court in the case of *Kimball* v. *Lewis,* 17 Utah 381, 53 Pac. 1037, in which case it is in substance held that unless the value of the homestead exceeds the exemption allowed by law neither the court nor anyone else may interfere with it. In view, therefore, that the plaintiff did not make it appear that the property in question, which is claimed as a homestead, at the time of trial was of a value in excess of the exemption allowed by law under our statute, the district court had no alternative save to dismiss the complaint.

Assuming, however, that the defendant John Anderson was insolvent, and in that condition sold nonexempt property, and used the proceeds to pay for a lot and a house which was erected thereon, and that he did that for the purpose of preventing the plaintiff from collecting any judgment she might obtain, or had obtained, against him, yet, so long as the plaintiff had no lien upon the property which was converted as aforesaid, she cannot complain. The law upon the point now under discussion is well stated by the Supreme Court of Alabama in the case of *Reeves* v. *Peterman,* 109 Ala. 366, 19 South. 512, where Mr. Justice Coleman, in speaking for the court, says:

"The one material question presented by the case is whether an insolvent debtor, having money or personal property which is liable to his debts, and ought to be applied to their payment, but upon which no lien has been acquired, can invest the same in a

homestead, and thereby defeat his creditor. Fully recognizing the rule that, so long as a creditor can trace the property or money of his debtor, liable to his demand, which has been fraudulently disposed of, he has the right to do so, and to subject them to his demand, we are of opinion the rule does not apply when the money or property, before lien acquired, is invested in a homestead, which, by law, is exempted from the demand."

In *Jacoby* v. *Parkland Distilling Co.*, 41 Minn. 227, 43 N. W. 52, in passing upon the rights of a debtor, the court said:

"Even if he disposes of his property subject to execution, for the very purpose of converting the proceeds into exempt property, this will not constitute legal fraud. This he may do at any time before the creditors acquire a lien upon the property. It is a right which the law gives him, subject to which every one gives him credit, and fraud can never be predicated on an act which the law permits."

To the same effect are *Ferguson* v. *Little Rock Trust Co.*, 99 Ark. 45, 137 S. W. 555, Ann. Cas. 1913A, 960; *Smith* v. *Rumsey*, 33 Mich. 183; *Backer* v. *Meyer* (C. C.) 43 Fed. 702; *McPhee* v. *O'Rourke*, 10 Colo. 301, 15 Pac. 420, 3 Am. St. Rep. 579; *Riggs* v. *Sterling*, 60 Mich. 643, 27 N. W. 705, 1 Am. St. Rep. 554. In the annotator's note to *Ferguson* v. *Little Rock Trust Co.*, *supra*, it is said:

"The preponderance of authority is to the effect that an insolvent debtor, knowing himself to be insolvent, may acquire a homestead for himself and his family and hold the same exempt from creditors, although it is purchased with non-exempt assets, and that fraud cannot be inferred from such an act."

The text is supported by numerous authorities.

Nor does the fact that the owner of the homestead has conveyed it with the intent to defraud his creditors affect his right to claim a homestead exemption in the premises so conveyed. *Buck* v. *Ashbrook*, 59 Mo. 200; *Arnold* v. *Estis*, *supra*.

In any view that may be taken, therefore, the plaintiff has not shown any legal right to attack defendants' homestead in this action, and for that reason the district court committed no error in dismissing the complaint.

The judgment is therefore affirmed, with costs to respondents.

STRAUP, C. J., and McCARTY, J., concur.