AMERICAN SAVINGS BANK OF MARENGO, Appellant, v. FRED H. WILLENBROCK, Appellee.

No. 39273.

DECEMBER 13, 1929.

*Havner, Flick & Powers,* for appellant.

*Wallace & Claypool,* for appellee.

MORLING, J.—The record does not require us to trace de-

fendant's homestead rights further back than to his ownership and occupation of 117 acres, prior to the incurring of the debt sued on. It does not appear that any homestead in the 117 acres had ever been platted, but the case was tried upon the theory that a particular 40 acres of that tract was a homestead. The 117 acres were subject to mortgages aggregating  in amount $19,175. After the indebtedness to plaintiff was incurred, defendant exchanged the 117 acres for the 40 acres now in controversy. He immediately moved upon, and has ever since with his family occupied, this 40 acres as his home. There was, when defendant acquired it, and still is, upon this 40 acres a mortgage for $4,000, which defendant assumed. At the time of the exchange, defendant gave to the vendor a second mortgage of $527, and later gave a third mortgage of $900, making the total mortgage incumbrance on the 40 in controversy $5,427. Each side produced five value witnesses. The value of the homestead 40 of the 117 acres, according to the average valuation of plaintiff's witnesses, was $9,200; according to that of defendant's witnesses, $9,820. The value of the remainder of the 117 acres, taking the average of the opinions given by plaintiff's witnesses, is $8,791, and according to that of defendant's witnesses, $10,995. The 117-acre tract was mortgaged to the amount of $19,185. Plaintiff argues that, on the basis of plaintiff's valuation, the 117-acre tract was mortgaged for more than it was worth, and on the basis of defendant's valuations, defendant would have an equity of $1,640, which represents the value of defendant's homestead rights. The 40-acre tract now in dispute is valued by plaintiff's witnesses at $14,080, or, deducting incumbrances of $4,527, $9,553. By defendant's witnesses it is valued at $11,640, or, after deducting the incumbrance of $4,527, $7,113. Plaintiff contends that, averaging the testimony, the value of defendant's equity in his presently owned 40 is $8,348, while the value of his equity in the 40 acres of the 117 acres was only $456, and that, on all of the testimony, the excess of value of the new homestead over that of the old is $7,892. Plaintiff's contention is that deducting the incumbrances (which it places at $4,527, instead of $5,427) from the $14,080 leaves defendant's equity in the present homestead $9,553, or deducting it from the $11,640, as valued by defendant's witnesses, leaves the equity $7,113; that, at most, the

value of the old homestead that went into the new one was $1,640; and that, therefore, the extent of the excess of the value of the present homestead over the value of the former homestead is $7,113, or, at the least, $5,473; and that the new homestead is liable to execution for approximately one of those sums.

Homestead exemption is allowed, not for the financial profit, or merely as a margin of financial safety to the debtor. The exemption is for the benefit of the family, to provide wife (or husband), children, and dependents with a home. The exemption is granted, not merely out of grace to the debtor, but as a matter of public policy. The state itself is interested in it. The law allowing the exemption is to be liberally construed, and is not to be pared away by construction, so as to defeat its beneficent, sociological, and economic purpose.

The homestead law, as it was last amended and codified, took effect July 4, 1923 (Chapter 237, Acts of the Fortieth General Assembly). Defendant moved on the 117 acres in 1920, and upon the 40 acres in question in June, 1923. Plaintiff claims nothing for the date of the indebtedness to it except its existence before the 40 now involved was acquired, but claims that, because of the incumbrances on the old homestead, the value of the old which entered into the new did not, on any of the evidence, exceed $1,640. We do not pause to discuss the question whether there are any material differences between the present homestead law and that contained in the Code of 1897. By Section 2972, Code, 1897:

"The homestead of every family, whether owned by the husband or wife, is exempt from judicial sale, where there is no special declaration of statute to the contrary."

This court has not undertaken to define the estate or right created by the homestead law, further than to say in general terms that "more than a mere privilege is created." *Sayers v. Childers,* 112 Iowa 677.

"It is the right to the enjoyment of the use of the property constituting the homestead and to protection therein during the periods designated, and is founded upon principles of the soundest policy * * *." *In re Estate of Adams,* 161 Iowa 88, 94.

The right, from its very nature, consists in the use and enjoyment by the family of the physical property, which, in the case of a rural homestead, is 40 acres. The law looks not to the particular estate which the homestead claimant may have in the tract. That estate may be limited in its nature. It may be incumbered. The tract may be as large as necessary to make the property worth the minimum of $500. It is the home, the right to its physical enjoyment, undisturbed by creditors, that is exempt, not merely the particular estate that the debtor has in his home. The value is the value of the tract, not the value of the debtor's interest in it. *Yates v. McKibben*, 66 Iowa 357.

This court said, in *Rutledge v. Wright*, 186 Iowa 777, 783:

"It is not essential to the acquisition of a homestead, within the meaning of the statute, that the claimant have a perfect or complete legal title. It is essential that he have a sufficient title to justify his occupancy. Occupancy under such a title will justify a claim of homestead right, subject to the limitations of the statute. * * * It shall not exceed one half an acre in area in a city, nor exceed 40 acres outside a city, except that it may be enlarged to a valuation of $500. In *Yates v. McKibben*, 66 Iowa 357, it was held that these dimensions and value are to be ascertained on the basis of a fee-simple title, even though the actual title of the claimant be less than a fee-simple title. * * * The logical corollary of this holding is that, to the extent of the area permitted by the statute, a homesteader with an imperfect and incomplete title may yet acquire the homestead right within the statutory limit, and may thereafter perfect or complete his title to the homestead area. Likewise, he may improve his homestead and add to its value. The date of the acquisition of the homestead is not thereby changed."

See, also, *Perry v. Adams*, 179 Iowa 1215; 29 Corpus Juris 844.

In the case before us, the estate in the former homestead was, and in the present one is, absolute, not qualified. There were and are merely liens upon the exempt property. The law permits the creation of such liens, but, when created, they do not operate in favor of creditors generally, and are not extended by the law, directly or indirectly, beyond the debt or charge for which they are granted. Defendant's title to the homestead is

good against all the world except the holders of the liens. Specifically, plaintiff in this case is not entitled to favorable consideration because the holders of other debts against defendant have been preferred, and have been given liens upon the present, or formerly existing homestead. The plaintiff is barred from pursuing the 40-acre tract in which defendant has the right of homestead exemption, unless the debt to plaintiff antedates defendant's acquisition of the homestead right. Defendant had right of homestead in 40 acres of the 117. He had the right to change his homestead, either by changing its physical limits, as authorized by Section 2981, Code, 1897, *et seq.*, or by acquiring an entirely new homestead with the old, or with its proceeds. Section 2981 reads:

"The owner may, from time to time, change the limits of the homestead by changing the metes and bounds, as well as the record of the plat and description, or vacate it, but such changes shall not prejudice conveyances or liens made or created previously thereto, and no such change of the entire homestead, made without the concurrence of the husband or wife, shall affect his or her rights, or those of the children. The new homestead, to the extent in value of the old, is exempt from execution in all cases where the old or former one would have been."

This provision of the law is somewhat different from that of its original, as found in Sections 1256 and 1257, Code, 1851, and carried into Sections 2000 and 2001, Code, 1873. In the case before us, there was not merely a change of the limits of the homestead, within the strict purview of these sections, nor is the case merely one of sale of a homestead and using the money derived from it, in whole or in part, in the purchase of another homestead. It is the case of one homestead's being transmuted by exchange immediately into another. The theory is that the new homestead is a continuance of the old, and the exemption dates from the acquisition and occupancy as a home of the old. *Blue v. Heilprin & Co.*, 105 Iowa 608, 614; *Yates v. McKibben*, 66 Iowa 357; *Rutledge v. Wright*, 186 Iowa 777; *Perry v. Adams*, 179 Iowa 1215; 29 Corpus Juris 840. This is so though means of the debtor in addition to the old homestead are used in acquiring the new. *Lay v. Templeton*, 59 Iowa 684; *Benham v. Chamberlain & Co.*, 39 Iowa 358. We reserve, without discussing, the

question whether, under the strict language of the statute, and the theory of the exemption, in connection with the fact that there was an exchange of homestead profitable to the debtor, without further investment by him in the property, the court may act on mere opinion evidence of exchange value. See 8 Words & Phrases 7278. As has been noted, the defendant's right to exemption attached when he acquired and occupied as his home the 40 in the 117 acres. From that date, he might have put on improvements. As to such improvements, defendant's right to exemption dated from the acquisition and occupancy of the homestead, and from that date, they, as well as the property in the form in which it was first purchased, were exempt. *Shaffer Bros. v. Chernyk,* 130 Iowa 686, 688; *Ebersole v. Moot,* 112 Iowa 596, 599. *Ebersole v. Moot* was an action to subject part of the value of a homestead to the payment of a judgment, and it was argued that, where one occupying a homestead becomes indebted, his exemption is only that which he has at the time, and substantial improvements thereafter made are not, and should not be, exempt, but constitute, *pro tanto,* subsequent acquisition. It is said:

"Section 2976 does no more than provide that the homestead shall be liable for debts contracted prior to its acquisition. This case does not come within the letter of the provision, nor do we see anything in the spirit of the law to justify us in giving it the construction contended for. * * * This particular question has not been determined by this court. We do not think, however, that plaintiff's claim can be sustained. The court found the homestead to be of the value of $1,000, and the value of the improvements thereon to be $700. It seems to us to be a proper legal inference, from the provisions of the law as to homestead rights, that the owner may make expenditures thereon and improvements thereto necessary to its preservation and suitableness for homestead occupation. The law on this subject has always received liberal construction in favor of the homestead occupant, out of considerations of public policy and the very humane and beneficent purpose that inspired the enactment of the law. This liberality of construction should not lead to the granting of rights not within the spirit and purpose of the enactment. That a homestead should be adequate to the needs of a family is so

clearly within the spirit of the law that it would hardly be questioned; and we think it to be a part of the homestead right that the owner may so maintain it that it is, in a reasonable sense, a home for the family, as to its capacity and conveniences, and that to this end changes may be made from time to time, and the expenditures, therefore, are protected as a part of the homestead right. The evidence is not before us, and we have no reason to assume in this case any improper expenditures.''

As the statute exempts the new homestead only to the extent of the value of the old, in respect to debts incurred between the acquisition of the first and that of the second, improvements on the new homestead cannot be taken into account in determining the value of the old. *Blue v. Heilprin & Co.*, 105 Iowa 608, 614.

Plaintiff relies upon a sentence in *Paine v. Means*, 65 Iowa 547:

''Nor are we informed as to how the value of the homestead right was affected by the incumbrances. It is impossible, therefore, to determine that the property in question represents the value of the homestead right in the farm * * *.''

But nothing was adjudicated in that case contrary to the principles announced in those herein cited.

It is a necessary deduction from *Rutledge v. Wright*, 186 Iowa 777, supra, that payments on the purchase price made after the acquisition of the homestead exemption may not be deducted from the value of the homestead tract, though made after the debt to which it is sought to subject the homestead was incurred; and this doctrine is fully sustained by principle and authority. In *First Nat. Bank v. Glass*, 25 C. C. A. 151 (79 Fed. 706), the circuit court of appeals for this circuit, speaking through Judge Sanborn, said:

''An insolvent debtor may use with impunity any of his property that is free from the liens and the vested equitable interests of his creditors, to purchase a homestead for himself and his family in his own name. If he takes property that is not exempt from judicial sale, and applies it to this purpose, he merely avails himself of a plain provision of the Constitution or the statute, enacted for the benefit of himself and his family. He takes nothing from his creditors by this action in which they

have any vested right. The Constitution or statute exempting the homestead from the judgments of creditors is in force when they extend the credit to him, and they do so in the face of the fact that he has this right. Nor can the use of property that is not exempt from execution to procure a homestead be held to be a fraud upon the creditors of an insolvent debtor, because that which the law expressly sanctions and permits cannot be a legal fraud. *Jacoby v. Distilling Co.,* 41 Minn. 227, 43 N. W. 52; *Kelly v. Sparks,* 54 Fed. 70; *Sproul v. Bank,* 22 Kan. 338; *Tucker v. Drake,* 11 Allen 145; *O'Donnell v. Segar,* 25 Mich. 367; *North v. Shearn,* 15 Tex. 174; *Cipperly v. Rhodes,* 53 Ill. 346; *Randall v. Buffington,* 10 Cal. 491. When the appellees sold their farm in Nebraska, and bought and took possession of their homestead in Kansas, the bank had acquired no lien and no specific equitable interest in any of the property of its debtor. It was his simple contract creditor, and it had no vested right in either his property or his residence. He had the right to change his residence from one state to another, and to secure for himself a homestead in any state where he chose to live. If, therefore, he had taken the conveyance of his homestead in Kansas in his own name, it would have been exempt from the judgment of the appellant.''

In *In re Wilson,* 59 C. C. A. 100 (123 Fed. 20, 22), the circuit court of appeals for the ninth circuit said:

''But the decided weight of authority sustains the doctrine that, where a homestead exemption is allowed by state law, an insolvent debtor may, out of the proceeds of a failing business, either purchase a homestead, or pay off an existing incumbrance thereon, and hold the same against the claims of his creditors, whether proceedings to subject the same to his debts be instituted under the state laws or under the national bankruptcy act. The reason assigned for this rule is that all persons dealing with or giving credit to such a debtor must be presumed to do so with a knowledge of the homestead exemption law and in view of the right of the debtor to place his property in the form of such homestead, and thereby beyond the reach of their demands.''

See, also, 27 Corpus Juris 447; *Crosby v. Anderson,* 49 Utah 167 (162 Pac. 75). Nor can the creditor defeat this right, or re-

duce in extent the homestead interest, by himself paying the incumbrance or the balance of the purchase price. *Hansen v. Mauss*, 40 Utah 361 (121 Pac. 605) ; *Libbey v. Davis*, 68 N. H. 355 (34 Atl. 744) ; 29 Corpus Juris 845.

This is in harmony with the general rule that the conversion of nonexempt property into exempt property does not, of itself, invest the creditor with any right to follow the exempt property. 27 Corpus Juris 440.

It is a necessary conclusion that the homesteader, after his right of exemption accrues, may pay for the property, may pay off liens upon it; and the fact that he does so does not bring forward the date from which his right of exemption to the tract as an entirety accrues, nor would such fact confer on the creditor the right to impose upon the homestead liability to the amount of such expenditures made after the incurring of the debt to him. And if he cannot follow the property because incumbrances have been paid, he cannot use the incumbrances to reduce the value of the homestead. If the homesteader and his wife agree to pay out of the proceeds of the sale of the homestead a debt which they owe, or if they agree to pay commission for its sale, or if there is a tax lien upon it or a valid mechanics' lien or a judgment for a debt antedating the homestead, and these have to be paid from the proceeds, it would not be said that the value of the homestead would be reduced thereby. The homesteader thereby would forego enjoyment of the full value as exempt, but the value itself would not be diminished. It can make no difference that he voluntarily makes these matters a lien. The value of the homestead is (as respects such matters) the value of the physical property, not the value of the owner's estate in it or the amount that the owner will enjoy from its sale. If the owner is able to sell for $50 or $5,000 more than the value given by witnesses, the sale price would be the best evidence of value, for value is determined by what the property will bring. What it actually brings, undiminished by sums paid out of the proceeds, is the value; and the value, or so much of the value as goes into the new homestead, determines the amount of the exemption of the new. It results that the value of defendant's homestead in the 40 of the 117 acres on the basis of the average of valuations by plaintiff's witnesses was $9,200, and on that by defendant's witnesses, $9,820. On the evidence, the court is of the opinion

that the value of the old homestead and the amount to which the new is exempt from execution on judgment on the indebtedness to plaintiff is $9,500.

Plaintiff has or claims no lien upon this 40 acres save as it may be permitted to obtain a judgment lien as a result of entry of judgment herein on the notes sued on, otherwise discharged  in bankruptcy. The incurring of the indebtedness sued on antedated the acquisition of the land in question, which appears to have been June 26, 1923. The judgment which plaintiff seeks is one "limited to a specific lien upon" the 40 acres. He asks that special execution issue for the sale of such real estate to satisfy the judgment. On December 20, 1924, defendant filed voluntary petition in bankruptcy, and was adjudged a bankrupt December 22, 1924. On January 13, 1925, defendant filed petition for discharge, proceedings on which were, on March 10, 1925, stayed "until after the determination of this litigation in the state court, or until such further time as ordered * * *." The petition in the present suit was filed March 13, 1925.

There are on the land in question three mortgages antedating the proceedings in bankruptcy: one of $4,000, dated March 9, 1923, one of $545, dated June 6, 1923, and one of $900, dated February 27, 1924. The principal of the indebtedness and some interest at least have not been paid. The land is subject, therefore, to contract liens amounting to $5,427, besides accumulated interest. Plaintiff's procedure here is dictated by the pendency of the bankruptcy proceedings and the contracting by the bankrupt of the indebtedness involved prior to the acquisition of the present homestead. The homestead is exempt to the extent in value of $9,500. Our statutes do not prescribe the procedure for ascertaining and subjecting the excess in value of the new homestead over the value of the old homestead. The statute merely provides in this connection that:

"The new homestead, to the extent in value of the old, is exempt from execution in all cases where the old or former one would have been." Section 2981, Code of 1897.

Plaintiff appeals to equity, and whether or not he is entitled

to relief in equity and the extent thereof must be determined on general principles of equity jurisprudence.

By the express provision of the statute, "the homestead of every family * * * is exempt from judicial sale, where there is no special declaration of statute to the contrary." Code of 1927, Section 10150 (Code of 1897, Section 2972). Independently of a favorable result of this action, plaintiff has no lien upon this land. By the recovery of judgment herein, plaintiff would acquire no lien upon the homestead. *Lamb v. Shays,* 14 Iowa 567. The homestead involved here is the 40-acre tract, to the extent in value of $9,500. Our statute does not give the plaintiff the right to sell the land including the homestead. The question was suggested, but not decided, in *Shaffer Bros. v. Chernyk,* 130 Iowa 686. The property to the extent in value of $9,500 is homestead, and therefore to that extent, by the clear language of the statute, exempt from judicial sale, as held in *Lamb v. Shays,* 14 Iowa 567. Any judgment rendered herein would not be a lien upon the tract up to $9,500 of its valuation. The tract to the extent of the value of $9,500 cannot be sold, under execution or other judicial sale. In *Harrison v. First Nat. Bank* (Tex. Civ. App.), 224 S. W. 269, 274, it is suggested that the entire tract may be sold, for the purpose of segregating the value of the excess from the exempted value; but it is said that the sale of the exempted interest would be only for the purpose of partition. Such procedure, however, has no support in the statute in this state. In *Clement v. First Nat. Bank* (Tex.), 259 S. W. 561, it is said that equity requires that the excess in value "be ascertained, and if possible, the excess segregated from the homestead before sale is made. To require less would likely result in injustice, and a sacrifice of both the homestead and the excess. At public sale, no one would be justified in bidding without some definite knowledge of the value of what was actually being sold. If the property is not susceptible of partition, so that the homestead may be segregated from the excess, and only the excess be sold, it should at least be determined what per cent of the value of the whole property is subject to sale, and this definite interest be offered for sale." This is the procedure which the parties to this suit in substance have adopted. The value of the 40 acres as an entirety is, according to plaintiff's witness, $14,080, and according to defendant's witnesses, $11,640. We are of the opinion that the value

cannot be placed higher than $13,000. Deducting the homestead exemption leaves the excess in value which could be subjected to the lien of a judgment, $3,500. Technically, therefore, a judgment would be a lien on a 7/26ths interest in the tract. Defendant had the right to, as he did, impose upon the entire tract the liens of the three mortgages which have been referred to. Those liens would be prior to the lien plaintiff is asking for. Plaintiff has no ground of complaint because of the imposition of such liens or such preference to other creditors, and makes none. By Section 2976, Code of 1897, it is provided that the homestead may be sold for debts ''created by written contract by persons having the power to convey, expressly stipulating that it shall be liable, but then only for a deficiency remaining after exhausting all other property pledged by the same contract for the payment of the debt.'' Section 10155, Code of 1927. If equity were to grant to plaintiff, therefore, the execution which it seeks, the plaintiff would have to sell the 7/26ths interest in the 40 subject to the three existing liens, amounting to $5,427, which defendant has the right to have paid first out of the 7/26ths interest. The value of this 7/26ths interest does not exceed $3,500. The prior debts against it are not less than $5,427.

Defendant has no other property, and is in bankruptcy. The mortgages, if paid at all, must be paid from the proceeds of the land in controversy. Equity will not exercise its powers for the purpose of establishing a merely abstract right which one of the parties may, through the exercise of discretion which the law gives him, nullify, or one which will merely inflict an injury on the defendant, or will accomplish no useful purpose. Equity will not act in the merely vain exercise of power. *Leffler v. City of Burlington*, 18 Iowa 361; *Rust v. Conrad*, 47 Mich. 449 (11 N. W. 265, 267, 41 Am. Rep. 720); 21 Corpus Juris 159; 10 Ruling Case Law 369. The defendant is in bankruptcy. His application for discharge has been stayed by the bankruptcy court for the purpose of permitting plaintiff to proceed with this present litigation. Plaintiff, in thus appealing for suspension of defendant's rights under the bankruptcy act, and in appealing to the conscience of the chancellor, must show a substantial right and a substantial benefit to be obtained from the intervention of the court of equity. Plaintiff is asking equity to grant it a specific lien on the land involved here, and to issue special execu-

tion for its sale. Such lien and special execution would, by the mere exercise of the right which defendant and his family have in his homestead, a right which he is insisting upon, avail the plaintiff nothing, unless it should be that plaintiff might bid in the 7/26ths interest in the property, and in some way secure the enforcement of the mortgages, and indirectly, because of defendant's financial helplessness, consume the homestead, which it is public policy to preserve for defendant and his family. In such circumstances, the court should exercise its equitable discretion in denying the merely technical, valueless, and possibly oppressive relief sought.—*Affirmed.*

EVANS and WAGNER, JJ., concur.

ALBERT, C. J., and STEVENS and FAVILLE, JJ., specially concur.

DE GRAFF, KINDIG, and GRIMM, JJ., dissent.

ALBERT, C. J., and STEVENS and FAVILLE, JJ. (specially concurring).—We concur in the law as expressed in the majority opinion. We think the plaintiff is entitled to an execution against the new homestead of the defendant for whatever it may secure of the value of the new homestead in excess of the value of the old homestead. What the plaintiff may be able to reach under its execution, and what liens may be superior to its, is not before us.

KINDIG, J. (dissenting).—I am sorry not to agree with my associates. It seems to me they are so fundamentally wrong that a dissent on this occasion is justifiable. Consequently, I hereby enter my protest against the majority opinion.

Appellee fixes the value of the old homestead, after deducting the incumbrances, at $1,640; while that of the new, after subtracting the liens, is $7,113. Assuming, without deciding, that appellee's figures regarding the equities in the respective properties are correct, then it is found that such value of the old was $1,640, and that of the new, $7,113. Thus, subtracting the one from the other, the amount of the new homestead subject to execution, according to appellant's theory, is $5,473: that is to say, appellee exchanged his old homestead, subject to incum-

brances, for a new one, also bearing mortgages. So the controversy arises concerning the extent of appellee's exemption in the newly acquired property, under those facts and circumstances. He insists, and the majority hold, that the value of the old homestead is to be determined regardless of incumbrances. Settlement of the dispute must be found in Section 10154 of the 1924 Code, which reads:

"Where there has been a change in the limits of the homestead, or a new homestead has been acquired with the proceeds of the old, the new homestead, to the extent in value of the old, is exempt from execution in all cases where the old or former one would have been."

There is contemplated in that statute a valuation; in fact, the word "value" is used. Hence, when a new homestead is obtained in exchange for the old, there must be a comparison of values between the old and the new. The lawmakers contemplated that there might be differences between the value of the old and the new. By what standard, then, is this measurement to be made? Some light is thrown upon this subject by the very language of the statute itself. Therein, it is said:

"Where * * * a new homestead has been acquired with the *proceeds of the old* [the italics are ours], the new homestead, to the extent in value of the old, is exempt from execution * * *."

Manifestly, it is understood there that the proceeds of the old, or its equivalent, will procure the new. See *Harm v. Hale,* 206 Iowa 920; *Benham v. Chamberlain & Co.,* 39 Iowa 358. Proceeds are of the old and value is of the old. Obviously, it was the legislative thought that, if the proceeds of an old homestead were used to procure a new, the debtor should be protected to the full extent thereof. Acquisition of the new is to be through the proceeds of the old. Those proceeds, the statute contemplates, shall procure the new. Consequently, it is the procuring value of the proceeds from the old that is material. Any portion or value of the new homestead not procured with the proceeds of the old, or the equivalent thereof, was not within the purview of the exemption legislation. Undoubtedly that is so, because, when the debtor enters the field of commerce, he must give value for value. In order to procure, he must exchange value.

For, without such value, there could be no procuring. This means the reasonable and ordinary commercial value of the old homestead. Forsooth, that is the only value thereof that can be measured with any degree of uniformity and certainty, for the practical purposes of the statute. That is the only value which will procure.

When the new purchaser takes possession of the old homestead, the former exemption, so far as he is concerned, has no value. Only one value is present for such purchaser, and that is the actual worth of the land. If, then, the realty is incumbered by a mortgage, the purchase price must be reduced to that extent. Therefore, the proceeds of such sale which the debtor would have to put into the new property must represent the net amount after deducting the lienable indebtedness. Said net remainder would be the proceeds which the debtor could invest in the new homestead. "Value of the old," therefore, because of its arrangement with the other divisions of the statutory section, must relate and refer to those proceeds. A different construction will be uncommercial, impractical, and unworkable. As employed in the statute, the word "value" must relate to the purchasing or the exchange power, because no other value would procure. Wherefore, the old homestead, so far as procuring possibilities are concerned, is limited to the equity for which the business man of the world is willing to make an exchange. Some indication of this is at least suggested in the following cases: *Sargent v. Chubbuck,* 19 Iowa 37; *Paine v. Means,* 65 Iowa 547; *Blue v. Heilprin & Co.,* 105 Iowa 608; *Shaffer Bros. v. Chernyk,* 130 Iowa 686. *Paine v. Means,* supra, declares:

"The farm consisted of 160 acres, of the value of $2,000. The incumbrances on it amounted to $1,200. The purchaser took it subject to these incumbrances, *and the property in question represents the difference between the whole value and the incumbrance.*" (The italics are ours.)

Also, *Blue v. Heilprin & Co.,* supra, indicates:

"The statute, in such a case as this, exempts only to the extent in value of the old homestead; *and therefore the other items which entered into the payment for the property cannot be considered, to enlarge the exemption.*" (The italics are ours.)

No purchasing value existed in the old homestead except the net equity after deducting incumbrances.

Clearly, the legislature had in view the procuring or purchasing value. Resultantly, when it referred to the value of the old homestead, it must have been that worth by which the owner could repurchase a new homestead. Beyond a peradventure of a doubt, exemption statutes are to be liberally construed; yet that does not mean that, under the guise of liberal construction, there can be put into the law that which the legislature had never intended should be there. Exemptions arise and exist only because of a statute. *Farmers Elev. & Livestock Co. v. Satre*, 196 Iowa 1076, thus explains:

"Appellee relies, to sustain the judgment, upon the propositions that exemption statutes are liberally construed * * *. It may be stated as the universal rule that exemption statutes are liberally construed in favor of the debtor. But, as we said in *Voris v. West*, 180 Iowa 138: '* * * it is not for this court to say that the legislature intended a larger grant of exemptions than is given by the plain wording of the statute.' "

Without a statute authorizing the particular exemption, none exists. Liberal construction will not permit adding that which the legislature failed to supply. An exemption will not be allowed merely and solely because it is claimed.

Within the provisions of the law, even under liberal construction, it is manifest that the meaning of value, as herein presented, is in harmony with the purpose and intention of the legislation. After the value of the old property has been thus fixed, the same principles will apply to the new, in arriving at its worth.

To repeat, the mortgage indebtedness on the old homestead shall be deducted in arriving at the value thereof, and likewise, the incumbrances on the new homestead property must be subtracted in arriving at its worth. Anything else would result in unfairness. An illustration will suffice. Assume that appellee's old homestead was worth $10,000, free and clear of all liens and incumbrances. But the total worth of the new homestead is $20,000, on which there is a mortgage of $10,000, leaving the net value of $10,000. Appellee actually put $10,000 in the new homestead, and, omitting the mortgage thereon, there is an equity

therein to that extent. Thereby appellee is permitted to have his equity in the new homestead, representing the value of the old, exempt from execution. Completing the contrast, it will be found that the opposite consideration will demonstrate the necessity of figuring the net worth of the new homestead, as well as the old. If, as assumed, appellee's old homestead was worth $10,000, and he put that amount into the new, which was incumbered by a mortgage of $10,000, but nevertheless contained an equity of the same amount, then, in order for appellee to save his homestead exemption, it would be necessary to preserve that equity in the new. So, if the entire value of the new is to be figured, in that event, regardless of the incumbrances, appellee would lose his investment of the old homestead proceeds, because the creditors would take the $10,000 equity in the new, and appellee would have nothing left but the incumbered portion thereof. Obviously, therefore, it is necessary to subtract the incumbrance on the new homestead in arriving at its value, just the same as on the old. Such method of valuation is eminently fair to the homestead debtor, because, under that theory, he can preserve his exemption. On the other hand, he is prohibited from speculating under the guise of mysterious homestead values at the expense of the creditor.

Furthermore, courts everywhere recognize that, in making a given pronouncement, reference must be had to the statute under consideration. What might be value under one legislative provision would not be under another. Again, one phase of the law will bring forth the court's discussion which could not be applied to another, due to the different legislative intention. Upon this basis, the authorities referred to by the majority can be readily distinguished. They cite *Yates v. McKibben,* 66 Iowa 357. However, that case did not discuss Section 10154, now under consideration, but rather, it referred to what is at present Section 10136 of the Code, relating to the extent of homesteads. The latter provision is:

"* * * otherwise it [the homestead] must not contain in the aggregate more than forty acres, but if * * * its value is less than five hundred dollars, it may be enlarged until it reaches that amount."

In the *Yates* case, the claimant sought to hold 80 acres of

land, because he owned only a life estate therein. His argument was that the value of his life estate in the entire 80 did not exceed $500. Nevertheless, the court said:

"When we speak of the value of land, reference is always had, unless our language be qualified, to the realty held in fee simple absolute."

Underlying that conclusion was the argument that, if the claimant prevailed, he would be entitled to a greater benefit than a homestead debtor who actually owned the fee-simple title. Quite different are the provisions of the statute under which such decision was reached, and those of the legislation now before us. Plainly, the *Yates* case was referring to the property's value, in order to fix the extent of the exempt territory under a specific legislative enactment. Repetition of the thought is here made that even said value was to be fixed 'for the purpose of limiting the homestead extent. Opposing the question of extent is that of value. Paramount in the present discussion is value, as distinguished from extent. Essentially different considerations must control.

Likewise, the majority refer to *Rutledge v. Wright,* 186 Iowa 777. Yet the problem there solved did not embrace the elements controlling in the case at bar. Permission in the *Rutledge* case was granted a debtor to perfect and complete his title to a homestead, and then hold the entire estate exempt from execution. Included within the language of that case are these words:

"The logical corollary of this holding [*Yates v. McKibben,* 66 Iowa 357] is that, to the extent of the area permitted by the statute, a homesteader with an imperfect and incomplete title may yet acquire the homestead right within the statutory limit, and may thereafter perfect or complete his title to the homestead area. Likewise, he may improve his homestead and add to its value. The date of the acquisition of the homestead is not thereby changed."

Everything there said related to the original homestead held by the debtor. This situation is foreign to the one contained in the statute before us. Analysis will quickly indicate this. With the exception of the legislation now under consideration, value,

generally speaking, is immaterial. Homestead exemption, regardless of value, includes 40 acres of farm lands (with the exception of the $500 valuation contained in the statute quoted). Extent, therefore, and not value, is there the criterion. Undoubtedly the legislature contemplated a fee-simple title for that extent of land. Explanation for *Yates v. McKibben* and *Rutledge v. Wright,* supra, and similar decisions, is thus afforded. A contrast of the principle involved in those citations and that under consideration here results in a striking difference. There, extent alone was material; yet here, value is the important thing, and extent is unimportant. That is due to the distinctions between the controlling statutes. The one provides for extent, and the other for value. Obviously, if the homestead once attaches, so that the entire property is exempt, the owner thereof may add to the value by improvements or through the payment of incumbrances. That is true because the original property is exempt. When once exempt, it is always so, until the exemption is waived or lost through some manner contemplated by law, as said in the *Rutledge* case. If the property is thus exempt, it remains in that status regardless of improvements or the payment of incumbrances. The reason therefor is that the improvements were placed upon, or the incumbrances removed from, exempt property. Hence the property is just as exempt with the improvements on and the incumbrances off as it was originally. In other words, total exemption carries with it the right to improve, and pay off incumbrances. However, as before stated, that principle does not control the present controversy, because here the property in question is not entirely exempt. One case presents an instance of total exemption, and the other of mere partial exemption. This property is exempt only to the extent that the value of the old homestead procured the new. Therefore, the portion sought by the appellant was never exempt, because that part or portion exceeds the value of the exempt property used to procure the new homestead. The partial exemption arose through the exchange process. In order to have the new property entirely exempt, its value must not exceed the old by which it was procured. What value? Manifestly, exchange, purchasing, or procuring value, and none other. Said value is the only one with which the exchange can be accomplished by the use of the old homestead. Without that purchasing power, a new homestead could not be

procured, and the old could never be exchanged. Necessarily, then, the value of the old must be that which will permit and enable the procurement of the new. No other value is provided for in the statute, and none other could have been within the contemplation of the legislature. Eliminating that definition of value, the statute will become, in practice, a nullity; because, without that conception of the old homestead worth, there never could be the procurement of the new. Such is true for the reason that no man would exchange new property for a value which was not in the old.

Sales and exchanges are practical affairs, and must be made, theoretically at least, upon sound business considerations. Everyday commercial sagacity would prevent the transfer of the new for anything except the equity of the old. We cannot attribute to the legislature a foolish or impractical intention. Hence, they must have meant that the equity of the old homestead alone should be exempt in the new.

Uncertainty and doubt are cast by the majority upon the homestead law, because they even suggest that estimated values cannot be considered at all. How would the majority make applicable the statute they have discussed? Evidence of value is received in the courts every day in numerous matters relating to the administration of civil and business affairs. Why should there be an exception here? Doubtless at the execution sale the proceeds of the new homestead over and above the incumbrances should first be applied to the debtor's exemption therein, for it is the surplus which can be taken by his creditors.

According to the majority's theory, the creditor could not realize on his judgment in any event until after the new homestead ceased, by abandonment, waiver, or otherwise. In fact, the majority would make the creditor a sort of a tenant in common with the homesteader in the new property. There is no basis in the statute for any such procedure, and I am sure the bar generally will be very much surprised to learn that such is the pronouncement of this court.

DE GRAFF and GRIMM, JJ., join in this dissent.